Argued and submitted March 7, 2000, decision of Court of Appeals and judgment of circuit court affirmed February 28, 2002

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## CARLOS ROBERTO FERMAN-VELASCO,
*Petitioner on Review.*

(C952773CR; CA A95127; SC S46172)

41 P3d 404

Mary M. Reese, Deputy Public Defender, Salem, argued the cause for petitioner on review. Also on the petition and brief was David E. Groom, Public Defender for Oregon, Salem.

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause for respondent on review. Also on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General, Salem.

Emily Simon, Portland, filed a brief of *amicus curiae* for Juvenile Rights Project, Inc.

David T. McDonald, Portland, filed a brief of *amicus curiae* for Parents Against Cruel and Unusual Punishment.

Before Carson, Chief Justice, and Gillette, Durham, Leeson, and Riggs, Justices.**

CARSON, C. J.

---

** Van Hoomissen, J., retired December 31, 2000, and did not participate in the decision of this case; Kulongoski, J., resigned June 14, 2001, and did not participate in the consideration or decision of this case; De Muniz and Balmer, JJ., did not participate in the consideration or decision of this case.

## CARSON, C. J.

In this criminal case, defendant claims that his mandatory minimum sentences, which the trial court imposed under ORS 137.700 (popularly known as Ballot Measure 11 (1994)),[1] offend certain provisions of the state and federal constitutions. He also argues that the trial court erred when it ordered him to pay some of the prosecution's witness fees. A divided Court of Appeals, sitting en banc, rejected all defendant's arguments. *State v. Ferman-Velasco*, 157 Or App 415, 971 P2d 897 (1998). For the reasons that follow, we affirm the decision of the Court of Appeals and the judgment of the trial court.

## I. BACKGROUND

In 1996, defendant was convicted of second-degree rape and first-degree sexual abuse for acts that he committed in the summer of 1995. The trial court sentenced defendant under ORS 137.700 to two concurrent, mandatory minimum sentences of 75 months' imprisonment and a post-prison supervision period of 10 years, less time served.[2] The trial court also ordered defendant to pay witness fees totaling $25 for two of the prosecution's witnesses.

---

[1] Measure 11 was an initiative that the voters adopted at the November 1994 general election. It became effective on April 1, 1995, Or Laws 1995, ch 2, and was codified as ORS 137.700. In this opinion, we use the designations Measure 11 and ORS 137.700 interchangeably.

[2] ORS 137.700 provides, in part:

"(1) When a person is convicted of one of the offenses listed in subsection (2)(a) of this section * * *, the court shall impose, and the person shall serve, at least the entire term of imprisonment listed in subsection (2) of this section. * * *

"(2) The offenses to which subsection (1) of this section applies and the applicable mandatory minimum sentences are:

"(a)(A) * * *

"* * * * *

"(K) Rape in the second degree,
as defined in ORS 163.365 ------------------------------------------------ 75 months

"* * * * *

"(P) Sexual abuse in the first
degree, as defined in
ORS 163.427 -------------------------------------------------------------- 75 months"

Defendant appealed, arguing that his Measure 11 sentences violated the proportionality clause of Article I, section 16, of the Oregon Constitution, because those sentences exceeded penalties imposed for crimes that the legislature had deemed to be more serious than defendant's crimes. Defendant also argued that his Measure 11 sentences violated his federal constitutional rights to equal protection, allocution, and counsel; the federal constitutional guarantee to a republican form of government; and his federal constitutional right to be free from cruel and unusual punishments. Finally, defendant claimed that the trial court was not statutorily authorized to order him to pay the prosecution's witness fees.

A majority of the Court of Appeals held that defendant's challenges were without merit. *Ferman-Velasco*, 157 Or App at 418, 424. Three members dissented, concluding that defendant's sentence violated the proportionality clause of Article I, section 16. *Id.* at 424-25, 444 (Warren, J., dissenting, joined by Armstrong and Wollheim, JJ.).

We allowed review to address defendant's state and federal constitutional challenges, and to determine whether the trial court had statutory authority to order defendant to pay the prosecution's witness fees.

## II.   OREGON CONSTITUTION

We address defendant's state constitutional challenge first. *See State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983) (court generally resolves questions of state law before reaching federal constitutional arguments). Before addressing defendant's argument respecting Article I, section 16, however, we discuss the relevant statutes and rules that underlie the issue presented in this case.

### A.   *Sentencing Guidelines and Measure 11*

In Oregon, the Oregon Felony Sentencing Guidelines (sentencing guidelines) serve as the primary means through which courts determine an offender's sentence for felony offenses. The cornerstone of the sentencing guidelines is the concept that sentences be based upon a consideration of two factors: the seriousness of the crime and the defendant's criminal history.

That concept has yielded the 99-block Sentencing Guidelines Grid. This court has described that grid and its operation as follows:

"A 'Crime Seriousness Scale' serves as the vertical axis of the grid. Most felonies fall within one of the 11 categories on the Crime Seriousness Scale. A 'Criminal History Scale' serves as the horizontal axis of the grid. The Criminal History Scale is made up of nine categories, ranging from 'minor misdemeanor or no criminal record' to 'multiple (3+) felony person offender.' The appropriate sentence for a given felony conviction is determined by (1) locating the appropriate category for the crime of conviction on the Crime Seriousness Scale; (2) locating the appropriate category for the convicted offender on the Criminal History Scale; and (3) locating the grid block where the two categories intersect. Each grid block contains what is called a 'presumptive sentence' * * *."

*State v. Davis*, 315 Or 484, 487, 847 P2d 834 (1993) (footnote omitted). For 46 of the 99 grid blocks, the presumptive sentence is a term of probation. OAR 213-005-0007(1).[3] For the remaining grid blocks, the presumptive sentence is a range of months of imprisonment. OAR 213-005-0001(1). The "dispositional line" separates those blocks that set probation and those that set imprisonment. OAR 213-003-0001(7).

Once a trial court has determined the presumptive sentence, the sentencing guidelines allow the court to depart either upward or downward from the presumptive sentence if there are "substantial and compelling" reasons in aggravation or mitigation. OAR 213-008-0001. The degree to which a trial court may depart from the presumptive sentence is limited, however. *See, e.g.*, OAR 213-008-0003 (setting upward durational departure for single conviction at double presumptive maximum); *State v. Langdon*, 330 Or 72, 74-76, 999 P2d 1127 (2000) (describing departure limits for consecutive sentences).

---

[3] The Oregon Criminal Justice Commission, the agency responsible for creating and updating the sentencing guidelines, has renumbered the sentencing-guideline rules since defendant committed his crimes. We cite to the most recent version of those rules.

Unlike the sentencing guidelines, which set out a multi-factor methodology for determining sentences, Measure 11 sets mandatory minimum sentences for certain felony offenses. Measure 11, codified at ORS 137.700, provides, in part:

"(1) When a person is convicted of one of the offenses listed in subsection (2)(a) of this section and the offense was committed on or after April 1, 1995, * * * the court shall impose, and *the person shall serve, at least the entire term of imprisonment listed in subsection (2)* of this section. The person is not, during the service of the term of imprisonment, eligible for release on post-prison supervision or any form of temporary leave from custody. The person is not eligible for any reduction in * * * the minimum sentence for any reason whatsoever under ORS 421.121 or any other statute. *The court may impose a greater sentence if otherwise permitted by law, but may not impose a lower sentence than the sentence specified in subsection (2)* of this section."

(Emphasis added.)

All the offenses covered by ORS 137.700(2)(a) (Measure 11 crimes) also are governed and ranked by the sentencing guidelines. For some Measure 11 crimes, the Measure 11 mandatory minimum sentence is less than the maximum sentence that is possible under the sentencing guidelines. *See State ex rel Huddleston v. Sawyer*, 324 Or 597, 604, 932 P2d 1145 (1997) (noting same when departure considered). For a Measure 11 crime that carries a mandatory minimum term of imprisonment that is less than the maximum sentencing guidelines sentence, Measure 11 allows the trial court to impose the sentencing guidelines sentence. *See* ORS 137.700 ("The court may impose a greater sentence if otherwise permitted by law * * *.").

For other Measure 11 crimes, however, the Measure 11 mandatory minimum is greater than the maximum sentencing guidelines sentence for that particular defendant. *See Huddleston*, 324 Or at 604 (so noting). For offenders who commit Measure 11 crimes that carry a mandatory minimum sentence that is greater than the maximum sentencing guidelines sentence (such as defendant), Measure 11 requires the trial court to set the defendant's sentence at the Measure 11 mandatory minimum. *See* ORS 137.700(1)

("court * * * may not impose a lower sentence than the sentence specified").[4]

A consequence of that situation—in which the Measure 11 sentence is greater than the maximum sentencing guidelines sentence—is that the Measure 11 sentence might be greater than the sentence that the sentencing guidelines assign to crimes with an equal, or even greater, crime-seriousness ranking. It is that disparity in sentences—between Measure 11 crimes and non-Measure 11 crimes that carry the same or greater crime-seriousness rankings—that defendant claims violates the proportionality requirement of Article I, section 16.

B. *Discussion*

With the foregoing in mind, we turn to the merits of defendant's argument that his Measure 11 mandatory minimum sentences violate Article I, section 16. Article I, section 16, provides, in part:

> "Excessive bail shall not be required, nor excessive fines imposed. Cruel and unusual punishments shall not be inflicted, *but all penalties shall be proportioned to the offense.* * * *"

(Emphasis added.) Defendant asserts his challenge under the emphasized "proportionality" requirement of that provision. Adopting the dissent's reasoning from the Court of Appeals' decision, defendant argues that the proportionality clause requires the legislature to set approximately equal sentences for crimes of equal severity and to set greater sentences for more serious crimes than those sentences set for less serious crimes. *See Ferman-Velasco*, 157 Or App at 426-39 (Warren, J., dissenting) (setting out reasons for that conclusion). Because his sentences under Measure 11 are greater than the presumptive sentence assigned to crimes ranked equally and more serious on the crime-seriousness

---

[4] Under Measure 11, defendant's mandatory minimum term of imprisonment is 75 months for each of his crimes. However, the presumptive sentence for each of his crimes, given defendant's criminal history "(H)" designation and the applicable crime-seriousness ranking of "(8)," is 19-20 months. Therefore, the maximum sentence that a court could impose upon defendant under the sentencing guidelines, assuming that the circumstances of his crimes warranted a full departure, would be 40 months for each crime.

scale of the sentencing guidelines, defendant claims that his Measure 11 sentences violate the proportionality requirement of Article I, section 16.[5]

We begin our analysis by examining a necessary statutory premise of defendant's argument. He assumes that the crime-seriousness rankings of the sentencing guidelines remained unchanged by the adoption of Measure 11 and that the sentencing guidelines represent an accurate, contemporary measure of the seriousness of his crimes for purposes of any constitutional proportionality analysis.[6] According to defendant,

> "* * * Measure 11 does not by its plain terms either amend the alphabetical or numerical classifications already assigned to the covered felonies nor does it invent entirely new classifications for them. On its face, the statute focuses on punishment and it simply does not deal with niceties such as the classification of the crimes being punished."

Therefore, defendant submits, the crime-seriousness rankings for his crimes were unchanged by Measure 11.

Defendant is correct that *Measure 11* does not adjust expressly the crime-seriousness ranking of the crimes that it covers. Nonetheless, it does not follow from that observation that Measure 11 simply superimposes a new set of sentences onto the sentencing guidelines sentences without having any effect upon the existing sentencing structure. What defendant has failed to consider—which we address below—is whether the laws governing the creation, adoption, and alteration of the sentencing guidelines require reclassification in

---

[5] We note that defendant compares each of his sentences (75 months) with the *presumptive sentence* assigned to crimes with the same crime-seriousness ranking and same criminal-history score (19-20). The state argues that, to evaluate proportionality under Article I, section 16, courts must compare the actual sentence imposed to the *maximum sentence* allowed by law for the comparative crime. Because we dispose of defendant's challenges upon other grounds, we do not address the state's argument.

[6] Defendant's argument also assumes that Article I, section 16, allows this court to compare unrelated crimes for purposes of proportionality. Because we resolve this case by rejecting the underlying premise of defendant's Article I, section 16, argument, we do not address that issue. *Cf. Leo v. Keisling*, 327 Or 556, 560, 964 P2d 1023 (1998) (court does not address constitutional issues when adequate statutory basis for decision exists).

light of subsequent legislative enactments, such as Measure 11.

In 1985, the legislature created the Oregon Criminal Justice Council (Commission)[7] to develop the sentencing guidelines. Or Laws 1985, ch 558, § 2. The legislature later codified the sentencing guidelines in 1989. Or Laws 1989, ch 790, § 87. That legislation (approving the sentencing guidelines as statutory law) provided:

> "* * * *[A]fter* adjournment sine die of the Legislative Assembly, the [Commission] shall review all new legislation that creates new crimes or reclassifies existing crimes. *The [Commission] shall make any necessary modifications to the crime seriousness scale of the guidelines to reflect the actions of the Legislative Assembly.*"

Or Laws 1989, ch 790, § 84 (emphasis added).[8]

■     That legislation directs the Commission to modify the crime-seriousness scale *"after* adjournment sine die of the Legislative Assembly," so as to *"reflect"* (emphasis added) legislative actions. It is clear from those provisions that the Commission must amend the crime-seriousness scale to reflect any subsequent legislative enactments that pertain to the seriousness of a crime.[9] Stated differently, the crime-seriousness scale does not, as defendant contends, set an

---

[7] The legislature later restructured the Council and renamed it the Oregon Criminal Justice Commission. Or Laws 1995, ch 420, § 1.

[8] The 1989 Legislature did not codify Oregon Laws 1989, chapter 790, section 84; however, in 1997, the legislature passed legislation with similar wording. That legislation was codified at ORS 137.667(1), which provides, in part:

> "The Oregon Criminal Justice Commission shall review all new legislation that creates new crimes or modifies existing crimes. The commission shall adopt by rule any necessary modifications to the crime seriousness scale of the guidelines to reflect the actions of the Legislative Assembly * * *."

[9] Although the legislature used the term "Legislative Assembly," the focus of Oregon Laws 1989, chapter 790, section 84 unquestionably was to direct the Commission respecting fulfillment of its duties in respect of future legislative enactments. In that regard, we conclude that the legislation also encompasses legislative enactments, such as Measure 11, that the people adopt as a co-ordinate lawmaking body. *See generally State ex rel. Carson v. Kozer*, 126 Or 641, 644, 270 P 513 (1928) (1902 amendment to Article IV, section 1, which created the initiative and referendum process, also created "two law-making bodies, the legislative assembly on the one hand and the people on the other, which in the exercise of the legislative powers are coequal and co-ordinate").

absolute measure of crime seriousness to which all subsequent enactments must comply; rather, the scale serves to reflect legislation regarding the seriousness of particular crimes, which can and does change over time.

In addition, we note that Oregon Laws 1989, chapter 790, section 84 directs the Commission to modify the guidelines to reflect legislative *"actions"* (emphasis added), not just specific enactments pertaining to the crime-seriousness scale. As such, *any* legislation that suggests a change in the seriousness of a crime—including the increase or decrease in the penalty for that crime—warrants a corresponding amendment to the sentencing guidelines.[10]

■       Therefore, we conclude that the fact that defendant's Measure 11 sentences are greater than those imposed for other crimes that carry the same or greater crime-seriousness rankings under the sentencing guidelines does not create the constitutional violation that defendant asserts. That is so, because the discrepancy among such sentences is due to the Commission's failure to amend the crime-seriousness scale to reflect the greater penalties that Measure 11 imposes for crimes such as defendant's, and that failure does not create a constitutional violation. Put differently, Measure 11 is not contrary to the legislature's crime-seriousness classification; rather, it represents the most recent legislative enactment demonstrating the seriousness with which the legislative branch views Measure 11 crimes, including defendant's crimes.

In light of the foregoing conclusion, the premise for defendant's proportionality argument—that the crime-seriousness rankings of the sentencing guidelines remained unchanged by the adoption of Measure 11 and, therefore, represent an accurate measure of the seriousness of his crimes for proportionality purposes—is without foundation. We

---

[10] Indeed, the *Oregon Sentencing Guidelines Implementation Manual*, 149 (Sept 1989), provides:

"The sentencing guidelines system is based on administrative rules adopted by the State Sentencing Guidelines Board. These rules were affirmatively approved by the 1989 Legislative Assembly. Section 87, Chapter 790, Oregon Laws 1989. While the guidelines have been approved by the legislature, they retain their status as administrative rules. When those rules conflict with statutes, the statutory provisions control."

therefore reject defendant's challenge under Article I, section 16.

## III. UNITED STATES CONSTITUTION

We turn to defendant's federal constitutional claims. Before this court, defendant argues that Measure 11 violates the Equal Protection Clause of the Fourteenth Amendment; the right to allocution under the Due Process Clause of the Fourteenth Amendment; the prohibition against cruel and unusual punishments under the Eighth Amendment; the right to assistance of counsel under the Sixth Amendment; and the Guarantee Clause of Article IV, section 4.

Defendant concedes in his petition and briefing that, in *Huddleston*, 324 Or 597, this court rejected a number of state and federal facial constitutional challenges to the propriety of sentencing under Measure 11. Nonetheless, defendant presents his federal constitutional arguments to this court to ensure exhaustion of his state remedies for the alleged violations of his federal constitutional rights. *See Duncan v. Henry*, 513 US 364, 365-66, 115 S Ct 887, 130 L Ed 2d 865 (1995) (to preserve claims for federal *habeas corpus* review, defendant must raise claims in state direct appeal).

Defendant is correct that this court previously has considered and rejected challenges to Measure 11 based upon the Equal Protection Clause of the Fourteenth Amendment and the Guarantee Clause. *Huddleston* 324 Or at 626, 630. We will not revisit those holdings here.

Defendant is mistaken, however, respecting this court's disposition of his remaining federal claims. Although this court has decided challenges to Measure 11 under some of the similar provisions in the Oregon Constitution, this court has not considered fully whether Measure 11 violates the Eighth Amendment prohibition against cruel and unusual punishment, the Fourteenth Amendment due process right to allocution, or the Sixth Amendment right to effective assistance of counsel.[11] We address each of those contentions below.

---

[11] *See State ex rel Caleb v. Beesley*, 326 Or 83, 93-95, 949 P2d 724 (1997) (rejecting challenge based upon Article I, section 16, prohibition against cruel and unusual punishment); *Huddleston* 324 Or at 611, 628 (rejecting challenge based upon state right to allocution under Article I, section 11). This court has not decided

A. *Eighth Amendment Prohibition Against Cruel and Unusual Punishments*

▪     We begin with defendant's argument that Measure 11 violates the Eighth Amendment prohibition against cruel and unusual punishments,[12] as incorporated and applied to the states through the Fourteenth Amendment. *See Furman v. Georgia*, 408 US 238, 239-40, 92 S Ct 2726, 33 L Ed 2d 346 (1972) (Eighth Amendment applicable to states through Due Process Clause of Fourteenth Amendment). Defendant contends that Measure 11 is cruel and unusual because it denies him the opportunity to seek a reduction of his sentence. Defendant relies upon United States Supreme Court cases that hold that death-penalty sentencing schemes that do not afford a meaningful opportunity for consideration of mitigating evidence violate the Eighth Amendment. *See, e.g., Penry v. Lynaugh*, 492 US 302, 319-28, 109 S Ct 2934, 106 L Ed 2d 256 (1989) (remanding for resentencing with jury instructions, if requested, that give jury opportunity to consider mitigating evidence of defendant's background and character or circumstances of crime).

The Supreme Court specifically has limited its holdings concerning the importance of mitigating evidence to capital cases. *See, e.g., Harmelin v. Michigan*, 501 US 957, 995, 111 S Ct 2680, 115 L Ed 2d 836 (1991) ("Our cases creating and clarifying the 'individualized capital sentencing doctrine' have repeatedly suggested that there is no comparable requirement outside the capital context, because of the qualitative difference between death and all other penalties."); *Woodson v. North Carolina*, 428 US 280, 304, 96 S Ct 2978, 2991, 49 L Ed 2d 944 (1976) (prevailing practice of individualized sentencing determinations reflects enlightened policy, rather than constitutional imperative; however, when inflicting death penalty, consideration of offender's character and record and circumstances of offense are constitutionally

---

whether Measure 11 violates the right to counsel under Article I, section 12, of the Oregon Constitution.

[12] The Eighth Amendment to the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

indispensable). Because this is not a capital case, and Measure 11 does not address capital crimes, we reject defendant's argument under the Eighth Amendment.

## B. *Fourteenth Amendment Right to Allocution*

■        Defendant next argues that Measure 11 violates his right to allocution under the Due Process Clause of the Fourteenth Amendment.[13] According to defendant, that right "primarily aims to provide the defendant an opportunity to plead for mitigation of the sentence." Defendant submits that, in *Green v. United States*, 365 US 301, 304, 81 S Ct 653, 5 L Ed 2d 670 (1961), the Supreme Court recognized that "[n]one of [the] modern innovations [respecting criminal procedure that have evolved since the seventeenth century] lessens the need for the defendant, personally, to have the opportunity to present to the court his plea in mitigation." Because Measure 11 would not allow the court to impose a sentence below his mandatory minimum sentence, defendant argues that Measure 11 denied him a meaningful right to allocution under the Due Process Clause.

In *Huddleston*, this court arguably addressed a similar federal allocution argument in the course of rejecting a defendant's federal equal-protection challenge to Measure 11. *See* 324 Or at 628 (citing earlier state allocution analysis as basis for concluding that Measure 11 did not infringe upon any federal right of allocution and therefore rejecting federal equal-protection challenge). Although the sweep of that conclusion is sufficiently broad to include defendant's argument here, the analysis that underlies that conclusion largely is indirect and reliant primarily—if not entirely—upon the right to allocution under the Oregon Constitution. For that reason, we elect to entertain defendant's argument that Measure 11 violates a federal right to allocution under the Due Process Clause.

The right to allocution is rooted in the common law. *Green*, 365 US at 304. Allocution is the defendant's formal address to the trial court following a guilty verdict, wherein

---

[13] The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides: "No State shall * * * deprive any person of life, liberty, or property, without due process of law * * *."

the court asks the defendant if any reason exists why the court should not impose the sentence. *See* Paul W. Barrett, *Allocution*, 9 Mo L Rev 115, 115 (1944) (explaining historical roots of allocution). At common law, only four narrowly defined answers could relieve the defendant of the sentence:

> "[T]he point of [allocution] was not to elicit mitigating evidence or a plea for leniency, but to give the defendant a formal opportunity to present one of the strictly defined legal reasons which required the avoidance or delay of sentencing: he was not the person convicted, he had benefit of clergy or a pardon, he was insane, or if a woman, she was pregnant."

Note, *Procedural Due Process at Judicial Sentencing for Felony*, 81 Harv L Rev 821, 832-33 (1968) (footnote omitted; emphasis added). A defendant who could not establish one of those strictly defined legal reasons nonetheless would "frequently address[ ] the court in mitigation of his conduct * * * [and] cast[ ] himself upon their mercy." Barrett, *Allocution*, 9 Mo L Rev at 118 (quoting 1 Chit Creditor L, 700). However, even under those circumstances, "nothing more [was] done, but the proper judge pronounce[d] the sentence." *Id.*

■     Many states have preserved the right to allocution in various forms. For example, although the Oregon Constitution recognizes a right to allocution, the right "does not carry with it a right to have the sentencing court *necessarily* be able to reduce a sentence that otherwise applies." *Huddleston*, 324 Or at 611 (emphasis in original). We observe, however, that it is uncertain whether and to what extent the right of allocution may have a basis in the United States Constitution. *See State v. Rogers*, 330 Or 282, 303, 4 P3d 1261 (2000) (so stating).

As already noted, defendant cites *Green* to support his argument that his Measure 11 sentence violates a federal constitutional right to allocution under the Due Process Clause. The issue in *Green*, however, was whether the trial court had violated Federal Criminal Rule 32(a), which then specifically granted to a defendant in federal court the right to speak in "mitigation" of his or her sentence. 365 US at 303, 303 n 1. *Green* was not based, as defendant suggests, upon

any federal constitutional guarantee. Indeed, one year after deciding *Green*, the Supreme Court held that

> "[t]he failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed is * * * *an error which is neither jurisdictional nor constitutional.*"

*Hill v. United States*, 368 US 424, 428, 82 S Ct 468, 7 L Ed 2d 417 (1962) (emphasis added). Even respecting a defendant's right to seek a reduction of a sentence during allocution, the Court has stated that it has "not directly determined whether or to what extent the concept of due process of law requires that a criminal defendant wishing to present evidence or argument presumably relevant to the issues involved in sentencing should be permitted to do so." *McGautha v. California*, 402 US 183, 218, 91 S Ct 1454, 28 L Ed 2d 711 (1971).

Turning to the case at hand, we conclude that, even assuming that a federal right to allocution exists under the Due Process Clause, and that such a right includes the opportunity to seek a reduction in sentence, defendant was not denied that right here. Defendant does not assert that the trial court denied him the opportunity to make whatever statement he wished to make. Rather, he argues that Measure 11, by denying the trial court the power to impose a sentence less than the mandatory minimum, has rendered the right to allocution ineffective. At bottom, defendant contends that his right of allocution is violated unless a court has authority to reduce a sentence as a defendant requests.

Nothing, however, in either the United States Constitution or in the Supreme Court's case law suggests that, in a mandatory sentencing scheme, the right to allocution includes, as a necessary result of that allocution, the ability of a trial court to reduce a mandatory minimum sentence that otherwise lawfully applies. Not even the allocution provided for in the rule at issue in *Green* affords the right that defendant claims here. Despite defendant's argument to the contrary, the Court in *Green* did not suggest that Rule 32(a) included a right to any particular range of sentences or to the consideration of any particular sentencing factors; rather, the rule provided an opportunity to address whatever factors

the substantive law made relevant. The same can be said, we think, of any federal constitutional right to allocution that might exist. We therefore reject defendant's allocution argument under the Due Process Clause of the Fourteenth Amendment.

## C.  Sixth Amendment Right to Counsel

■  Finally, defendant claims that Measure 11 violates his right to counsel under the Sixth Amendment,[14] as incorporated and applied to the state through the Fourteenth Amendment. See Gideon v. Wainwright, 372 US 335, 342-45, 83 S Ct 792, 9 L Ed 2d 799 (1963) (Sixth Amendment applicable to states through Due Process Clause of Fourteenth Amendment). As we understand defendant's argument, he does not contend that his lawyer was not present at sentencing; neither does he contend that his lawyer prejudiced his case by failing to act according to professional standards. Rather, defendant essentially claims that he constructively was denied the assistance of counsel because Measure 11, which required a mandatory minimum sentence, prevented his lawyer from advocating for a lesser sentence.

We begin, and end, our analysis by noting the similarity between that argument and defendant's federal allocution argument. Specifically, both arguments rest upon the notion that defendant, or someone in his behalf, has the right to plead for and, more importantly, to obtain, a lesser sentence. As we already noted, however, the Supreme Court has not held that there is a constitutional right to have an otherwise lawful mandatory minimum sentence reduced based upon the defendant's circumstances. Because defendant, himself, was not entitled to have his sentence reduced based upon his statement in allocution, neither was he entitled to have the court reduce his sentence based upon the statements of his lawyer. Consequently, we reject defendant's argument under the Sixth Amendment.

---

[14] The Sixth Amendment to the United States Constitution provides, in part: "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence."

## IV.  WITNESS FEES

We turn to defendant's final assignment of error, which raises the issue whether the trial court had authority to order defendant to pay some of the prosecution's witness fees. Both parties rely upon the interplay (or lack thereof) between two statutes—ORS 136.602(1) and ORS 161.665(1)—to support their conflicting contentions respecting the trial court's order. ORS 136.602(1) provides, in part:

> "*Except as otherwise specifically provided by law*, the per diem fees and mileage and any expenses allowed [by statute] *due to any witness* in a grand jury proceeding, or any prosecution witness in a criminal action or proceeding in a circuit * * * court * * * *shall be paid by the county* in which the grand jury proceeding or criminal action or proceeding is held. Payment shall be made upon a claim verified by the witness, showing the number of days attended and the number of miles traveled, and a certified statement * * * showing the amounts due the witness."

(Emphasis added.) ORS 161.665(1) provides, in part:

> "* * * [T]he court, only in the case of a defendant for whom it enters a judgment of conviction, may include in its sentence thereunder a provision that the convicted defendant shall pay as costs expenses *specially incurred* * * * in prosecuting the defendant. Costs include a reasonable attorney fee for [court-appointed] counsel * * *. Costs shall not include expenses *inherent in providing a constitutionally guaranteed jury trial* or expenditures in connection with the maintenance and operation of government agencies that must be made by the public irrespective of specific violations of law."

(Emphasis added.)

Defendant contends that our analysis should begin with ORS 136.602(1), which, as set out above, requires that the county in which the trial is held pay the prosecution's witness fees, "[e]xcept as otherwise specifically provided by law." In defendant's view, the trial court had authority to impose payment of those fees upon defendant only if ORS 161.665(1),

which allows such an imposition of costs (with certain exceptions), qualified as an exception to ORS 136.602(1). Defendant concludes that, because ORS 161.665(1) does not "specifically provide[ ]" that a convicted defendant can be held responsible for payment of the prosecution's witness fees, that statute does not qualify as an exception to a particular county's absolute responsibility for such fees under ORS 136.602(1).

The state responds that ORS 136.602(1) and ORS 161.665(1) serve different purposes and apply at different points during a criminal proceeding. In the state's view, ORS 136.602(1) imposes *initial* financial responsibility (unless otherwise "specifically provided by law") for the prosecution's witnesses upon the county in which the trial is held, while ORS 161.665(1) provides that, upon conviction, a defendant may be ordered to provide *reimbursement* of certain expenses, which could include the prosecution's witness fees. In the state's view, the prosecution's witness fees qualify as costs that a trial court may impose upon a convicted defendant under ORS 161.665(1), unless such fees constitute "expenses inherent in providing a constitutionally guaranteed jury trial," ORS 161.665(1), thereby falling within the statutory exception set out in ORS 161.665(1).

■ Resolution of the parties' dispute requires that we construe ORS 136.602(1) and ORS 161.665(1). Accordingly, we begin by examining the text and context of the statutes, to ascertain the legislature's intent. *See PGE v. Bureau of Labor and Industries,* 317 Or 606, 610-11, 859 P2d 1143 (1993) (describing methodology).

As noted, ORS 136.602(1) provides, in part, that per diem fees, mileage, and statutory expenses "due to * * * any prosecution witness in a criminal action * * * shall be paid by the county" in which that action is held, "[e]xcept as otherwise specifically provided by law." That statute further provides that payment shall be made "upon a claim verified by the witness" and a "certified statement" setting out certain information required for payment. The textual references to fees, mileage, and expenses *"due* to any witness" (emphasis added), as well as to payment made "upon a *claim"* (emphasis added) verified by a witness suggest that ORS 136.602(1)

concerns the initial payment of monies directly to a prosecution witness, at the time when the witness requests payment. That is, as the state contends, the text appears to assign responsibility for fees, mileage, and expenses associated with the prosecution's witnesses at the time when those costs become due and owing. Nothing in the context of ORS 136.602(1) contradicts that reading of the statute.

Under the foregoing reading of ORS 136.602(1), the introductory phrase "[e]xcept as otherwise specifically provided by law" refers to any statutory provision that imposes *initial* responsibility for the prosecution's witness expenses upon a person or an entity other than the county in which the trial is held. That phrase does not, as defendant suggests, refer to a statute (such as ORS 161.665(1), as explained below) that might allow a trial court to order *reimbursement* of such expenses.

Turning to ORS 161.665(1), that statute authorizes a trial court to impose responsibility for the prosecution's expenses generally upon a convicted criminal defendant, as part of that defendant's sentence. *See* ORS 161.665(1) ("the court * * * may include in its sentence * * * a provision that the convicted defendant shall pay as costs expenses specially incurred * * * in prosecuting the defendant" (emphasis added)). Nothing in that statute conflicts with the requirement in ORS 136.602(1) that a particular county must pay fees, mileage, and expenses "due" to a prosecution witness upon the filing of a claim by that witness; indeed, the fact that ORS 161.665(1) speaks to costs already "incurred" suggests, as the state contends here, that that statute authorizes a trial court to order a convicted defendant to provide reimbursement for certain prosecution expenses (such as witness fees) already paid.

In sum, we agree with the state that the trial court had authority under ORS 161.665(1) to require defendant to pay, as costs, the prosecution's witness fees, provided that such fees did not fall within the statutory exception set out in ORS 161.665(1). That exception provides:

"Costs [that a defendant may be ordered to pay upon conviction] shall not include *expenses inherent in providing a constitutionally guaranteed jury trial* or expenditures in

connection with the maintenance and operation of government agencies that must be made by the public irrespective of specific violations of law."

(Emphasis added.) Defendant contends that, because he has a constitutional right to meet witnesses face to face,[15] expenses associated with such witnesses fall within that statutory exception. The state responds that the statutory exception does not include expenses such as the prosecution's witness fees.

■     To determine the intended scope of the phrase "expenses inherent in providing a *constitutionally guaranteed jury trial*" in ORS 161.665(1) (emphasis added), we begin by setting out various constitutional rights afforded in criminal prosecutions under the state and federal constitutions. Article I, section 11, of the Oregon Constitution, provides, in part:

> "In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor[.]"

The Sixth Amendment to the United States Constitution provides, in part:

> "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, * * * and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

Although worded differently, both the state and federal constitutions grant criminal defendants the right to a

---

[15] We note that, for purposes of this opinion, we use the phrase from Article I, section 11, of the Oregon Constitution, "meet the witnesses face to face," to refer to both the right to meet witnesses under Article I, section 11, as well as the right to "be confronted with the witnesses against [an accused in a criminal prosecution]" under the Sixth Amendment to the United States Constitution.

"public" trial by an "impartial jury." In light of the text of ORS 161.665(1), which refers to "expenses inherent in providing a constitutionally guaranteed *jury trial*" (emphasis added), we think it is clear that, if nothing else, any expenses related to the impartial, public "jury trial" itself—such as juror fees—fall within that statutory exception.

■      The more difficult question is whether the statutory exception set out in ORS 161.665(1) also encompasses those expenses associated with a defendant's right to meet witnesses face to face, such as the prosecution's witness fees (which secure the appearance of and compensate witnesses against the defendant). In other words, the question is whether the exception set out in ORS 161.665(1) encompasses certain expenses associated with those constitutional rights that serve to protect a defendant at trial, not only those directly associated with an impartial, public jury trial. When we consider the statutory exception in context, it is apparent that the legislature, at the least, did not intend that exception apply to expenses associated with *all* constitutional rights that protect a defendant at trial. That is so, because ORS 161.665(1) specifically excludes from the exception those expenses associated with payment of court-appointed counsel—expenses that clearly are associated with the right to assistance of counsel, which, like the right to meet witnesses face to face, serves to protect a criminal defendant during trial. *See* 333 Or at 438 (setting out that part of ORS 161.665(1)). Consequently, we cannot conclude, at our first level of analysis, that the phrase "expenses inherent in providing a constitutionally guaranteed jury trial" necessarily encompasses expenses associated with the right to meet witnesses face to face, when it specifically excludes expenses associated with the right to assistance of counsel.

Turning to the legislative history of ORS 161.665(1), *see PGE*, 317 Or at 611-12 (court examines legislative history if legislature's intended meaning cannot be ascertained from examining text and context of statute at issue), we first note that statute was part of the revised Oregon Criminal Code that the Criminal Law Revision Commission (Revision Commission) prepared in 1970. Or Laws 1971, ch 743, § 80; Proposed Oregon Criminal Code, Final Draft and Report, § 80,

76-77 (July 1970).[16] The Commentary to the Proposed Oregon Criminal Code does not elaborate on the intended meaning of the phrase "expenses inherent in providing a constitutionally guaranteed jury trial" in what later became ORS 161.665(1). However, the Commentary does note that the section of the proposed code that eventually became ORS 161.665(1) was derived from section 1525 of the Michigan Revised Criminal Code (1967). Proposed Oregon Criminal Code, Final Draft and Report, § 80, Commentary at 77.

The Commentary to section 1525 of the Michigan Revised Criminal Code, in turn, cites the case of *People v. Hope*, 297 Mich 115, 297 NW 206 (1941), for the following proposition:

> "the defendant cannot be assessed the expenses attributable *to use of the jury* in the case against him; the Constitution guarantees that right, and the state cannot charge him for what he is guaranteed."

Michigan Revised Criminal Code, Final Draft, § 1525, Commentary at 146 (September 1967) (emphasis added). In *Hope*, the defendant had challenged a cost order that included both witness fees and juror fees, in addition to other costs. The Michigan Supreme Court invalidated the order respecting juror fees, reasoning that the defendant could not be ordered to pay such fees because "[e]very person charged with a criminal offense has a *constitutional right to a trial by jury.*" *Hope*, 297 Mich at 118, 297 NW at 208 (emphasis added). The court, however, upheld the imposition of witness fees without comment. *Id.* at 118-19, 297 NW at 208; *see also People v. Kennedy*, 58 Mich 372, 377, 25 NW 318, 320 (1885) (noting that defendants should not be ordered to pay costs of jurors, because "it would be monstrous to establish a practice of punishing persons convicted * * * for demanding what the constitution of the state gives them,—a trial by jury").

---

[16] The 1971 Legislature generally adopted the proposed revisions set out in the Proposed Criminal Code, including what ultimately became ORS 161.665(1). Or Laws 1971, ch 743; *see also State v. Chakerian*, 325 Or 370, 376 n 10, 938 P2d 756 (1997) (so explaining). The commentary that the Revision Commission prepared was available to the legislature throughout its deliberations on the proposed revision and is considered part of the legislative history of the Oregon Criminal Code. *Chakerian*, 325 Or at 376 n 10, 379.

As can be seen, the Michigan case law supporting section 1525 of the Michigan Revised Criminal Code (1967), from which ORS 161.665(1) was derived, supports the conclusion that, in using the phrase "expenses inherent in providing a constitutionally guaranteed *jury trial*" (emphasis added), the Oregon Legislature intended to encompass only expenses relating to a defendant's jury trial itself, not expenses associated with other constitutional rights that apply at the time of trial, such as the right to meet witnesses face to face.

The materials from the Oregon Revision Commission are not as illustrative as the Michigan case law, but are helpful to some extent. In the course of deliberating the article of the proposed Oregon Revised Criminal Code that included what later became ORS 161.665(1), one Revision Commission member queried as to the sort of expenditures that could not be imposed upon a convicted defendant under the statutory exception. The Executive Director of the Revision Commission responded that, under the exception as a whole, the following expenses could not be so imposed: "district attorneys' salaries, sheriffs' salaries, jurors' fees, police investigations, etc." Minutes, Criminal Law Revision Commission, May 14, 1970, 28.

The foregoing reference to "jurors' fees" is consistent with our reading of the case law surrounding section 1525 of the Michigan Revised Criminal Code (1967), from which ORS 161.665(1) was derived, that is, that the phrase "expenses inherent in providing a constitutionally guaranteed jury trial" encompasses such fees. As to the other types of expenses that the Executive Director mentioned, it is evident that such expenses fall within the second part of the statutory exception set out in ORS 161.665(1), that is, "expenditures in connection with the maintenance and operation of government agencies that must be made by the public irrespective of specific violations of law." We have reviewed the materials surrounding the 1971 Legislature's subsequent deliberations and enactment of the revised Criminal Code, and have found nothing that further assists our analysis.

Taken as a whole, the legislative history of ORS 161.665(1) demonstrates that, in using the phrase "expenses

inherent in providing a constitutionally guaranteed jury trial" in the statutory exception to imposition of costs upon a convicted defendant, the legislature intended to except expenses associated with a criminal defendant's jury trial itself, such as juror fees. Conversely, the legislature did not intend that statutory exception to encompass expenses associated with a defendant's constitutional right to meet witnesses face to face. Consequently, the trial court did not err when it ordered defendant to pay the prosecution's witness fees under ORS 161.665(1).[17]

## V. CONCLUSION

We reject defendant's challenge to Measure 11 under Article I, section 16, of the Oregon Constitution. We also reject defendant's various challenges to Measure 11 under the United States Constitution. Finally, we reject defendant's contention that the trial court had no statutory authority to order defendant to pay the prosecution's witness fees.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

---

[17] We note that defendant did not raise—and we do not decide—the issue whether either the state or federal constitutions prevent the legislature from allowing a trial court to impose costs associated with a criminal defendant's constitutional right to meet witnesses face to face.