IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32583-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARIANO DIAZ-FARIAS, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — Under RCW 10.01.160, a court may impose costs on a convicted criminal defendant at the time of sentencing, with "costs" for this purpose being "limited to expenses specially incurred by the state in prosecuting the defendant" or for other limited purposes not relevant here. RCW 10.01.160(2). "They cannot include expenses inherent in providing a constitutionally guaranteed jury trial or expenditures in connection with the maintenance and operation of government agencies that must be made by the public irrespective of specific violations of law." *Id.*

Mariano Diaz-Farias pleaded guilty to first degree assault on the day his jury trial was to have begun. A principal issue in this appeal are legal financial obligations (LFOs) imposed on him for the county's costs of a jury, a court reporter, and a court appointed

interpreter—expenses that he argues either fall within the cost reimbursement exceptions for "expenses inherent in providing a constitutionally guaranteed jury trial" or were required by other state laws to be borne by the county.

Consistent with cases construing the Oregon statute on which RCW 10.01.160 is based, we hold that the cost reimbursement exception for "expenses inherent in providing a constitutionally guaranteed jury trial" applies to juror costs, but not to expenses incurred in protecting other constitutional rights of a defendant at trial; and that statutes requiring the county to bear certain expenses in the first instance do not conflict with RCW 10.01.160's authorization to require a convicted defendant to reimburse "costs . . . incurred by the state."

Nonetheless, we follow *State v. Marintorres*, 93 Wn. App. 442, 969 P.2d 501 (1999), which holds that RCW 2.43.040(4)'s authorization to tax costs of interpreters to non-English speaking criminal defendants violates equal protection. *Id.* at 450. We also direct the trial court on remand to identify the nature of the court reporter cost included as an LFO so that the parties may address whether it is a cost specially incurred by the prosecution or one that must be made by the public irrespective of specific violations of law.

Finally, because a remand for resentencing on the LFOs is required, we exercise our discretion to review Mr. Diaz-Farias's unpreserved argument that the sentencing court failed to engage in an individualized inquiry into his present or future ability to pay

the LFOs. We accept the State's concession that ability to pay was not examined on the record by the sentencing court and order that that be done on remand.

## FACTS AND PROCEDURAL BACKGROUND

Mariano Diaz-Farias pleaded guilty to one count of first-degree assault, entering his plea the morning his criminal trial was set to begin.

At sentencing, after announcing that it would sentence Mr. Diaz-Farias to the 93 months recommended by the State, the court said it was increasing the costs requested by the State by $2,200, "in recognition of the court reporter costs, the juror costs and the interpreter costs incurred in anticipation of the trial date which could not be recouped." Report of Proceedings (RP) at 22. The court's decision to include the additional costs was sua sponte, and the record does not reveal what part of the $2,200 reflected "court reporter costs," "juror costs" or "interpreter costs," or what supported the component amounts. Other than that change, the court signed the judgment and sentence proposed by the State.

In addition to the court's handwritten addition of "$2,200" as "other court costs," the court's judgment and sentence reflected the following LFOs that had been proposed and included by the State: a $500 victim assessment, a $200 criminal filing fee, a $140 sheriff service fee, a $125 crime lab fee, and a $100 DNA[1] collection fee. Before

---

[1] Deoxyribonucleic acid.

including the $2,200 as "other court costs" and signing the judgment and sentence, the court did not inquire into Mr. Diaz-Farias's present or future ability to pay the discretionary LFOs.

At no time during the sentencing hearing did Mr. Diaz-Farias object to the LFOs. He nonetheless timely appealed, challenging only the imposition of LFOs.

## ANALYSIS

For the first time on appeal, Mr. Diaz-Farias raises several challenges to the LFOs imposed by the sentencing court as exceeding the sentencing court's authority under RCW 10.01.160 and other statutes. He also contends that because the sentencing court failed to inquire into his present or future ability to pay the discretionary costs imposed, we must remand for resentencing.[2]

The State responds that because Mr. Diaz-Farias failed to raise any of his objections in the trial court, we should apply the general rule that we will not consider errors raised for the first time on appeal. RAP 2.5(a). By reply, Mr. Diaz-Farias concedes that following *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015), the trial court's failure to engage in an individualized inquiry does not require us to reverse, but he argues that we should exercise our discretion to review the alleged error.

---

[2] Mr. Diaz-Farias concedes that $800 of the LFOs (the $500 victim assessment fee, the $200 criminal filing fee, and the $100 DNA collection fee) were mandatory. Br. of Appellant at 2 n.1.

No. 32583-1-III
*State v. Diaz-Farias*

We first review the sentencing court's authority to impose costs, next address the application of RAP 2.5(a) to challenges to LFOs that are not raised in the trial court, and finally—having concluded that some of Mr. Diaz-Farias's challenges are to sentencing errors that may be raised for the first time on appeal and exercising our discretion to review others—we turn to his arguments of error.

### I. The statutory authority and obligation of the sentencing court to consider and impose costs

It is a well settled proposition that at common law, costs (as such) in criminal cases were unknown, so that liability for costs arises only from statutory enactment. *Annot., Items of costs of prosecution for which defendant may be held*, 65 A.L.R.2d 854 (collecting cases); *State v. Buchanan*, 78 Wn. App. 648, 651, 898 P.2d 862 (1995). In Washington, RCW 9.94A.760(1) provides that

> [w]henever a person is convicted in superior court, the court may order the payment of a legal financial obligation as part of the sentence. The court must on either the judgment and sentence or on a subsequent order to pay, designate the total amount of a legal financial obligation and segregate this amount among the separate assessments made for restitution, costs, fines, and other assessments required by law.

"Legal financial obligation" is generally defined by RCW 9.94A.030(31) as meaning

> a sum of money that is ordered by a superior court of the state of Washington for legal financial obligations which may include restitution to the victim, statutorily imposed crime victims' compensation fees as assessed pursuant to RCW 7.68.035, court costs, county or interlocal drug funds, court-appointed attorneys' fees, and costs of defense, fines, and any

5

other financial obligation that is assessed to the offender as a result of a felony conviction.

RCW 10.01.160, which provides that "[t]he court may require a defendant to pay costs," RCW 10.01.160(1), describes the scope and limitations on the type of costs that can be imposed:

> Costs shall be limited to expenses specially incurred by the state in prosecuting the defendant or in administering the deferred prosecution program under chapter 10.05 RCW or pretrial supervision. They cannot include expenses inherent in providing a constitutionally guaranteed jury trial or expenditures in connection with the maintenance and operation of government agencies that must be made by the public irrespective of specific violations of law.

RCW 10.01.160(2). Elsewhere, the statute provides that

> The court shall not order a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.

RCW 10.01.160(3). If a trial court determines at some time after the sentence has been imposed that the costs will impose a manifest hardship on the defendant or his family, the court "may remit all or part of the amount due in costs, or modify the method of payment." RCW 10.01.160(4).

These statutory provisions satisfy the requirements of a constitutional cost and fee recovery regime. *State v. Curry*, 118 Wn.2d 911, 915-16, 829 P.2d 166 (1992).

> II. *Some of Mr. Diaz-Farias's challenges are to sentencing error that may be raised for the first time on appeal; we exercise discretion to consider others.*

In Mr. Diaz-Farias's opening brief, he argued that where a sentencing court fails to comply with the requirement of RCW 10.01.160(3) that it "take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose," the result is an illegal or erroneous sentence that may be challenged for the first time on appeal. Br. of Appellant at 8 (citing *State v. Ford*, 137 Wn.2d 472, 477, 973 P.2d 452 (1999)).

In *Blazina*, our Supreme Court held that "[u]npreserved LFO errors do not command review as a matter of right under *Ford* and its progeny," explaining that in those cases, it was a concern about sentence conformity that motivated its decision to allow review of a "narrow category" of cases in which errors, if permitted to stand, "would create inconsistent sentences for the same crime" and result in some defendants receiving "unjust punishment simply because his or her attorney failed to object." *Blazina*, 182 Wn.2d at 833-34. "[A]llowing challenges to discretionary LFO orders would not promote sentencing uniformity in the same way," and where such an error is unique to a defendant's circumstances, an appellate court "properly exercise[s] its discretion to [deny] review." *Id.* at 834.

Mr. Diaz-Farias raises the same "failure to consider financial ability to pay" challenge that *Blazina* holds does not command review as a matter of right. But he also

7

challenges whether the sentencing court exceeded its statutory authority by burdening him with some costs that no criminal defendant is intended to bear. Sentencing errors appropriate for review for the first time on appeal include errors in calculating offender scores and errors in the imposition of community custody requirements. *See id.* at 833-34 (citing *State v. Mendoza,* 165 Wn.2d 913, 919-20, 205 P.3d 113 (2009); *Ford,* 137 Wn.2d at 475-78; *State v. Bahl,* 164 Wn.2d 739, 743-45, 193 P.3d 678 (2008)). Review of these types of error is appropriate because "the error, if permitted to stand, would create inconsistent sentences for the same crime . . . and some defendants would receive unjust punishment simply because his or her attorney failed to object." *Id.* at 834. We conclude that Mr. Diaz-Farias's assignments of error to costs he contends are not authorized by statute under any circumstances are sentencing errors of the sort that can be raised for the first time on appeal.

Because judicial economy will be served by remanding all of the LFO issues if we remand some, we review all of Mr. Diaz-Farias's assignments of error.

### III. *Mr. Diaz-Farias's challenges to costs imposed sua sponte*

#### A. The statutory cost reimbursement exception for expenses "inherent in providing a constitutionally guaranteed jury trial"

Mr. Diaz-Farias argues that juror costs, court reporter costs, and the expense of a Spanish-speaking interpreter are all expenses "inherent in providing a constitutionally guaranteed jury trial" that cannot be included in an award of costs under RCW

10.01.160(2). No reported Washington decision has construed the prohibition on imposing such expenses or attempted to reconcile it with the legislature's provision elsewhere that some constitutionally required expenditures by the State *can* be imposed on criminal defendants. As noted earlier, for example, RCW 9.94A.030(31) defines legal financial obligations as including "court-appointed attorneys' fees" and "costs of defense," both of which are not directly associated with *jury trial*, but are associated with other constitutional rights that serve to protect a defendant at trial. Washington decisions have long recognized that the cost of a court-appointed lawyer for an indigent defendant is one that can be imposed under RCW 10.01.160. *E.g., State v. Eisenman*, 62 Wn. App. 640, 644, 810 P.2d 55 (1991).

The closest examination of RCW 10.01.160 has been by Division Two of our court in *Utter v. State*, 140 Wn. App. 293, 165 P.3d 399 (2007). In that differently-postured case, the State sought to recover state hospital costs incurred in evaluating and treating a defendant who was possibly incompetent to stand trial. Since RCW 10.01.160(1) provides that most costs can be recovered only from defendants who are *convicted*, the defense urged the court to find that the evaluation and treatment expenses provided by the hospital were "specially incurred by the state in prosecuting the defendant," that RCW 10.01.160 was the controlling statute, and that the expenses could not be recovered from Utter, who was ultimately found incompetent to stand trial and was never convicted. The State urged the court to apply a different statute, which

9

generally authorized the State to recover treatment expenses from patients treated in State hospitals.[3]

Division Two observed that no Washington cases had construed pertinent language in RCW 10.01.160, but it observed that "because our legislature adopted RCW 10.01.160 from former ORS 161.665, we consider Oregon's construction and interpretation of former ORS 161.665 as authoritative." *Utter*, 140 Wn. App. at 309 (citing *State v. Earls*, 51 Wn. App. 192, 197, 752 P.2d 402 (1988), *disapproved on other grounds by Curry*, 118 Wn.2d at 915).

A year before the 1976 adoption of the legislation now codified in part at RCW 10.01.160, our own Supreme Court had invalidated a probation condition requiring a criminal defendant to reimburse the State for court-appointed attorney fees, pointing out that while Oregon had enacted requirements for the repayment of court appointed attorney fees that survived constitutional challenge in the United States Supreme Court, Washington had no such statute. *State v. Hess*, 86 Wn.2d 51, 53-54, 541 P.2d 1222 (1975) (citing *State v. Fuller*, 417 U.S. 40, 94 S. Ct. 2116, 40 L. Ed. 2d 642 (1974)). The next year, the Washington legislation adopted cost reimbursement legislation identical to

---

[3] The legislature responded to the *Utter* decision in 2008 by amending RCW 10.01.160 to provide that its limitations only apply to the State's recovery of "direct costs relating to evaluating and reporting to the court, prosecutor, or defense counsel regarding a defendant's competency to stand trial." LAWS OF 2008, ch. 318, § 2, *codified as* RCW 10.01.160(5).

Oregon's 1971 statute. The Washington attorney general has relied on Oregon case law in responding to at least two requests for guidance on which costs can be imposed on a defendant under RCW 10.01.160. 1976 Op. Att'y Gen. No. 14, at 2-3, 1976 WL 168498; 1978 Op. Att'y Gen. No. 4, at 4-6, 1978 WL 23884.

*Utter* recognized that it was unclear whether the cost reimbursement exception for "expenses inherent in providing a constitutionally guaranteed jury trial" was broad enough to extend to a defendant's constitutional right to appear and defend in person, but the court concluded that it had not been called on to decide that issue. 140 Wn. App. at 311. It noted that the breadth of the cost reimbursement exception had been addressed in *Oregon v. Ferman-Velasco*, 333 Or. 422, 41 P.3d 404 (2002).

The Oregon Supreme Court was called on in *Ferman-Velasco* to determine whether the cost reimbursement exception for "expenses inherent in providing a constitutionally guaranteed jury trial" encompasses only those expenses directly associated with a jury trial, or expenses associated with all other constitutional rights that serve to protect a defendant at trial. 41 P.3d at 442. A sentencing court had imposed the prosecution's witness fees on the defendant, who contended that because he had a constitutional right to meet witnesses against him "face to face" under article I, section 12 of the Oregon Constitution and a confrontation right under the Sixth Amendment to the United States Constitution, the witness fees were expenses inherent in providing a constitutionally guaranteed jury trial.

11

The Oregon court concluded that the defendant's argument for such a broad reading of the exception failed at the first level of analysis: reading the exception in context. The statute contemplated that defendants could be required to reimburse the State for the cost of court-appointed counsel, the right to which, "like the right to meet witnesses face to face, serves to protect a criminal defendant during trial." *Id.* at 415. It was thus "apparent that the legislature . . . did not intend [the] exception to apply to expenses associated with *all* constitutional rights that protect a defendant at trial." *Id.* (emphasis in original).

The Oregon court also considered the legislative history and case law construing the Michigan cost reimbursement provision on which its own statute was based. It discussed *People v. Hope*, 297 Mich. 115, 297 N.W. 206 (1941), in which the Michigan Supreme Court had reversed that part of a cost order that imposed juror costs on a convicted defendant, but had affirmed the imposition of witness fees. *Ferman-Velasco*, 41 P.3d at 415 (citing 297 Mich. at 118-19). It concluded that Michigan case law

> supports the conclusion that, in using the phrase "expenses inherent in providing a constitutionally guaranteed *jury trial*". . . the Oregon Legislature intended to encompass only expenses relating to a defendant's jury trial itself, not expenses associated with other constitutional rights that apply at the time of trial.

*Id.* at 416 (emphasis in original).

Both the Oregon and Michigan cases are persuasive authority that the "*juror costs*" that the sentencing court imposed on Mr. Diaz-Farias are the type of expense that

the exception was intended to exempt from assessment on a criminal defendant under RCW 10.01.160(2). *And see* 1976 Op. Att'y Gen. No. 14, at 4 (the statute "plainly excludes such costs as compensation of jurors even though specially incurred"). Notably, after the Attorney General concluded in 1978[4] that RCW 10.01.160 was irreconcilable with preexisting RCW 10.46.190 (authorizing sentencing courts to assess a fixed "juror fee" against a criminal defendant) and that the 1976 legislation impliedly repealed the earlier statute, the legislature amended RCW 10.01.160 to explicitly provide that the jury fee provided by RCW 10.46.190 can be imposed as a cost. See LAWS OF 1987, ch. 363, §1 at 1381.

We agree with Mr. Diaz-Farias that the $250 statutory jury fee provided by RCW 10.46.190 is the only jury-related cost that may be imposed under RCW 10.01.160(2), given its express prohibition on imposing expenses inherent in providing a jury trial. In resentencing Mr. Diaz-Farias as to costs, the court may not impose any other jury-related expense.

The Oregon and Michigan cases are also persuasive authority that court reporter costs and interpreter costs are *not* included within the cost reimbursement exception for

---

[4] 1978 Op. Att'y Gen. No. 4, at 4-6.

13

expenses inherent in providing a jury trial. We need not consider further whether these expenses were associated with other constitutional rights.[5]

### B. Statutory provisions for court reporters and interpreters

Mr. Diaz-Farias next contends that the sentencing court erred in imposing court reporter and interpreter costs because both court reporter and interpreter expenses are addressed by state laws requiring that counties cover those costs.

Addressing court reporter expense, he points out that superior court judges in larger counties are required by statute to appoint a county court reporter who will be paid out of county funds. RCW 2.32.180; RCW 2.32.210 (a reporter's compensation "shall be paid out of the current expense fund of the county or counties where court is held"). In smaller counties, such as Adams County where Mr. Diaz-Farias was convicted, a judge may appoint a reporter if he or she determines that a reporter is necessary. RCW 2.32.220. Adams County Local Rule 14 provided at the time of Mr. Diaz-Farias's sentencing that "[i]n criminal matters, all pre-trial motions and appearances will be recorded electronically, and the Court will arrange for a court reporter to be in attendance

---

[5] Mr. Diaz-Farias argues that court reporters are constitutionally required, relying on article 4, section 11 of the Washington Constitution, which provides that superior courts are to be "courts of record." *State v. Gonzales-Morales*, 138 Wn.2d 374, 379, 979 P.2d 826 (1999) addresses the constitutional right of a defendant in a criminal case to have an interpreter.

14

for criminal trials at the expense of Adams County." Former ADAMS COUNTY SUPER.

CT. R. 14(C) (1992), *readopted as* ADAMS COUNTY SUPER. CT. R. 12(C).

Addressing interpreter expense, Mr. Diaz-Farias points out that RCW 2.43.040(2)

provides that "in all legal proceedings in which a non-English speaking person is a

party . . . including criminal proceedings . . . the cost of providing the interpreter shall be

borne by the governmental party initiating the legal proceedings."

A statute requiring a county to bear an expense in the first instance is not

inconsistent with a statute providing that reimbursement of the county's expense can be

ordered by a sentencing court. Indeed, the only expenses with which RCW 10.01.160 is

concerned are "expenses . . . incurred by the state."

This issue, too, was addressed in the Oregon Supreme Court's decision in *Ferman-Velasco*. There, the defendant argued that because a statute required counties to pay

witness fees in grand jury and criminal proceedings, such fees could not then be imposed

on a criminal defendant under ORS 161.655. The court disagreed and held that state law

could require counties to pay expenses of prosecution as they became due to third parties

without conflicting with ORS 161.655's authorization to sentencing courts to impose

responsibility for such expenses on a convicted criminal defendant. 41 P.3d at 440. It

reasoned that "the fact that ORS 161.655(1) speaks to costs already 'incurred' suggests,

as the state contends here, that that statute authorizes a trial court to order a convicted

15

defendant to provide reimbursement for certain prosecution expenses (such as witness fees) already paid." *Id.*

Washington's statute providing for county payment of court reporter expense explicitly contemplates county payment in the first instance, followed by possible taxation and reimbursement as costs. While Mr. Diaz-Farias points out that RCW 2.43.040(2) provides that the cost of providing an interpreter for a non-English speaking person is borne by the governmental body initiating the prosecution, he ignores the fact that subsection (4) of the same statute provides, "The cost of providing the interpreter is a taxable cost of any proceeding in which costs ordinarily are taxed."

Although not pointed out by Mr. Diaz-Farias, however, we cannot ignore the fact that the provision under which he could be taxed with an interpreter cost has been declared unconstitutional as applied to a criminal defendant. In *Marintorres*, supra, the defendant successfully challenged an assessment of the costs of his Spanish-speaking interpreter under RCW 2.43.040(4) and 10.01.160(2) on equal protection grounds. 93 Wn. App. at 451-52. He pointed out that chapter 2.42 RCW, which deals with providing interpreters for hearing impaired parties, requires the county to appoint and pay for a qualified interpreter without any provision that the expense of the interpreter is a taxable cost. This court agreed that there was a violation of equal protection, reasoning that this distinction in the treatment of hearing-impaired and non-English speaking criminal defendants could not satisfy even "rational basis" review. *Id.* at 451. Since neither

16

chapter 2.42 nor 2.43 of the RCW has been amended in response to *Marintorres,* we rule that in resentencing Mr. Diaz-Farias as to legal financial obligations, the court may not impose any expense of an interpreter.

A final issue remaining as to the cost imposed for a court reporter is whether it qualifies as a cost "specially incurred by the state in prosecuting the defendant" or whether it is excluded from recovery as an "expenditure[] in connection with the . . . operation of [a] government agenc[y] that must be made by the public irrespective of specific violations of law." RCW 10.01.160(2). We found no decision holding that any expense incurred in operating a *court* is a cost "specially incurred by the state in prosecuting the defendant." Oregon cases have held that costs specially incurred by *police and prosecutors* cannot include "the regular salaries of law enforcement officers involved in an investigation and the ordinary overhead expenses of maintaining a police agency . . . principally because they are incurred irrespective of specific violations of law." *State v. Heston,* 74 Or. App. 631, 634, 704 P.2d 541, 542 (1985); *accord State v. Wilson,* 193 Or. App. 506, 510, 92 P.3d 729, 731 (2004) (Department of Corrections did not incur expense other than the regular salaries of employees, hence no cost could be assessed against the defendant). Given the dearth of information as to the nature of the court reporter expense included by the sentencing court in the $2,200 in "other court costs," we order the court on remand to identify the nature of the expense so that the

17

parties may advance legal arguments as to whether it is or is not a cost that may be imposed.

### *IV.    Mr. Diaz-Farias's challenges to costs included in the State's proposed judgment*

Mr. Diaz-Farias's remaining challenges are to matters of which he had advance notice yet did not address in the trial court. We exercise our discretion to review them since we are otherwise remanding for resentencing on the sole issue of the LFOs.

### A. Crime Lab Fee of $125

Mr. Diaz-Farias argues that the sentencing court erred when it imposed a crime lab analysis fee of $125. The fee was assessed under RCW 43.43.690, which provides in part:

> When an adult offender has been adjudged guilty of violating any criminal statute of this state and a crime laboratory analysis was performed by a state crime laboratory, in addition to any other disposition, penalty, or fine imposed, the court shall levy a crime laboratory analysis fee of one hundred dollars for each offense for which the person was convicted.

RCW 43.43.690(1). Mr. Diaz-Farias argues that under the plain language of the statute, the fine is to be levied only if "a crime laboratory analysis was performed by a state crime laboratory" and points out that the State failed to present any evidence that a

laboratory analysis was ever performed.[6] Alternatively, he argues that the fee, even if appropriate, should have been in the statutorily-required amount of $100, not $125. Since we are remanding for review of other LFO issues, we direct the sentencing court to reconsider this fee.

### B. Failure to engage in individualized review of ability to pay

Mr. Diaz-Farias's final argument is that under RCW 10.01.160(3), "[t]he court shall not order a defendant to pay costs unless the defendant is or will be able to pay them." RCW 10.01.160(3). "The record must reflect that the trial court made an individualized inquiry into the defendant's current and future ability to pay." *Blazina*, 182 Wn.2d at 838. He argues that no individualized inquiry was made.

The State agrees that the sentencing court did not examine Mr. Diaz-Farias' present or future ability to pay LFOs on the record. It concedes error in the event we exercise our discretion to review the issue. Br. of Resp't at 2-3. Again, since we are remanding for review of other LFO issues, we direct the sentencing court to engage in the individualized inquiry into the defendant's current and future ability to pay that is required by RCW 10.01.160(3).

---

[6] During the sentencing hearing, the prosecutor mentioned "ballistics" in a context unrelated to the legal financial obligations it had proposed. Report of Proceedings at 14 ("And ballistics bore out that only one weapon was fired in this altercation and it in fact was the defendant's weapon.") But no evidence or argument supported the State's request that the court levy the fee.

No. 32583-1-III
*State v. Diaz-Farias*

We reverse the discretionary LFOs imposed by section 4.3 of the judgment and sentence and remand for resentencing solely with respect to those LFOs, consistent with this opinion.

Siddoway, C.J.

WE CONCUR:

Brown, J.

Fearing, J.