IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34006-6-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JAY TREVOR POWERS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Trevor Powers appeals some of the costs imposed in the

judgment and sentence convicting him of two counts of second degree assault with

firearm enhancements. In a pro se statement of additional grounds, he raises challenges

to the convictions and the enhancements. We find no error or abuse of discretion and

affirm.

FACTS AND PROCEDURAL BACKGROUND

In March 2015, Trevor Powers was employed as a caretaker at the Cañon De Sol

Winery. On the evening of March 15, 2015, he and his roommate Brent Parrish were

driving back to the winery after a several hour absence when they saw a black pickup

truck parked on the property with its headlights off. Mr. Parrish, who was driving, pulled

in front of the truck, shining his headlights into the cab. Mr. Powers took a handgun out

of his backpack, loaded it, stuck it in his belt, got out of the car and approached the truck with the reported intention of speaking with its occupants.

The parked truck belonged to 21-year-old Matthew Mahan, who had driven to the winery with his girlfriend, 19- or 20-year-old Alyssa Aitoro, to park and talk about problems they were having in their relationship. With the problems apparently resolved, they had moved into the back seat. When they saw Mr. Parrish's car turning into the winery property, they resumed their seats in the front.

When the car stopped in front of them, almost blocking them, Mr. Mahan turned on his headlights. As Mr. Powers approached them, he had one hand in the air and the other behind his back, apparently reaching for his waistband. Fearing he had a gun, Mr. Mahan floored his gas pedal and made a hard right turn to get around the car. As he did, Mr. Powers began to fire at the pickup truck. Mr. Mahan put his arm around Ms. Aitoro's back and pushed her down as he continued to drive away. Eleven bullet holes were later found in the truck, starting at the driver's side door, continuing down the driver's side of the pickup, and finishing in the back of the truck. When the couple arrived at Ms. Aitoro's home, her father called police.

Mr. Powers was interviewed late that evening and again two days later by Benton County Sheriff's Detective Justin Gerry. On March 20, five days after the incident, he was charged with two counts of second degree assault, each with a firearm enhancement. The charges were later amended to include one count of first degree malicious mischief.

2

Mr. Powers's first court-appointed lawyer was Sylvia Cornish and trial was initially set for May 11, 2015. During her representation, Ms. Cornish arranged for a forensic psychological assessment of Mr. Powers by Philip Barnard, a clinical psychologist. Dr. Barnard sent an eight page report to Ms. Cornish on April 29, 2015, in which he expressed opinions that Mr. Powers was mentally competent and normal or average in many respects, but concluded with an opinion that at the time of the alleged assaults, "several contributing elements" resulted in "significantly impaired" reasoning, judgment, and impulse control that Dr. Barnard characterized as resulting in "diminished capacity." Clerk's Papers (CP) at 96.

Mr. Powers signed three waivers of his speedy trial right in May, July, and August 2015, the third of which was to allow John Chambers, who substituted as counsel for Ms. Cornish in July, to be ready for trial. Trial ultimately began on December 7, 2015.

Mr. Powers did not testify at trial but his two recorded police interviews were entered into evidence. Mr. Parrish testified for the defense. Mr. Powers's defense at trial, consistent with his statements to Detective Gerry, was that he reasonably unloaded his handgun in self-defense after Mr. Mahan floored his gas pedal and the pickup came "flying at him, full throttle, engine revving, rocks flying everywhere." Report of Proceedings (RP) at 207.[1]

---

[1] All references to the report of proceedings are to the volume that begins with Mr. Powers's arraignment on March 23, 2015, and includes the trial proceedings.

3

The jury was unpersuaded by the defense and found Mr. Powers guilty on all counts, returning special verdicts finding that he had been armed with a firearm in committing the assaults. At sentencing, defense counsel Chambers asked the court to impose an exceptional downward sentence, explaining that he had supplied the State with a copy of Dr. Barnard's forensic evaluation, which would support RCW 9.94A.535(1)(c)'s mitigating circumstance of having "commited the crime under duress, threat, or compulsion insufficient to constitute a complete defense, but which significantly affected [the defendant's] conduct." RP at 237.

The trial court denied the request for a departure and sentenced Mr. Powers to a total 85 months' confinement. It imposed costs in the total amount of $4,552.50, listing several that were summarized on a cost bill signed by a deputy court clerk that the court attached to the judgment and sentence. Mr. Powers did not object. The court also imposed restitution in the stipulated amount of $8,520.90, consisting of the insurer's $7,084.56 cost of repairs to Mr. Mahan's pickup, $800 to Mr. Mahan for repair costs not covered by insurance, and $636.34 in counseling expenses incurred by Ms. Aitoro.

Mr. Powers appeals.

## ANALYSIS

The only assignments of error made by Mr. Powers's brief on appeal are to the superior court's allegedly improper delegation to the court clerk of the authority to

impose special costs and to the prosecutor's alleged failure to fulfill its obligation to

examine and approve the cost bill.

Mr. Powers points out that by statute, it is only the superior court who may order

the payment of a legal financial obligation (hereafter sometimes "LFO") as part of a

convicted defendant's sentence, and that the court

> must on either the judgment and sentence or on a subsequent order to pay,
> designate the total amount of a legal financial obligation *and segregate this*
> *amount among the separate assessments made for restitution, costs, fines,*
> *and other assessments required by law.*

RCW 9.94A.760(1) (emphasis added).  He adds that costs imposed on a defendant "shall

be limited to expenses specially incurred by the state in prosecuting the defendant . . . .

They cannot include expenses inherent in providing a constitutionally guaranteed jury

trial."  RCW 10.01.160(2).

He also points out that by statute, it is the duty of the prosecutor to

> [c]arefully tax all cost bills in criminal cases and take care that no useless
> witness fees are taxed as part of the costs and that the officers authorized to
> execute process tax no other or greater fees than the fees allowed by law.

RCW 36.27.020(7).

In this case, he contends, the trial court said only the following in imposing over

$4,500 in LFOs on Mr. Powers:

> THE COURT: I would impose, then, the restitution as indicated; the
> $500 crime victim assessment; $100 felony DNA collection fee.
> Mr. Powers, you were working at the time of this the incident.  Is
> there any reason that you are not capable of working?

5

DEFENDANT POWERS: Not at this time, no, Ma'am.

THE COURT: I would impose, then, the court costs, attorney's fees, [and] jury fee.

Costs and fees in the sum of $4,552.50; plus the restitution.

RP at 244-45. In addition, Mr. Powers acknowledges that the judgment and sentence signed by the court directed payment of the $500 crime victim assessment, $250 jury demand fee, $700 in attorney fees, and the $200 filing fee. Br. of Appellant at 5.

Mr. Powers's concern is with an additional "special cost reimbursement" of $2,742.50 that the superior court included in its total, derived from the cost bill signed by deputy court clerk Amy Hauer. CP at 107. He concedes the cost bill includes notations of two amounts that add up to the $2,742.50—"DR $2,000" and "INV $742.50"—but complains that these are unidentified and "[t]here is no way to determine from the record whether or not the special cost reimbursement falls within the prohibitions of RCW 10.01.160(2)." Br. of Appellant at 7.

Neither party has briefed the issue of whether these assignments of error may be raised for the first time on appeal. *See* RAP 2.5(a). In *State v. Diaz-Farias*, 191 Wn. App. 512, 520, 362 P.3d 322 (2015), we held that an assignment of error to costs that a defendant contends are not authorized by statute under any circumstances is one that can be raised for the first time on appeal. Lacking briefing from the parties, we will assume without deciding that Mr. Powers's argument that the superior court improperly delegated

6

authority to the court clerk falls within this category. We deem waived his argument that the prosecutor failed in this case to carefully review and tax costs.

In responding to the challenge to the special cost reimbursement, the State points to documents in the record that explain the "DR $2,000" and "INV $742.50" notations on the cost bill. CP at 107. The first is a $2,000 bill for Dr. Barnard's (hence, "DR") expert services for the defense. CP at 117. The second is a $742.50 bill for a defense investigator (hence, "INV"). CP at 118. Mr. Powers accepts these as supporting documents, but argues by reply that a defendant, through court-appointed counsel, has a right to such services that is guaranteed by the Sixth Amendment to the United States Constitution, the Washington State Constitution, Const. art. 1, § 22, and CrR 3.1(f)(1), citing *State v. Punsalan*, 156 Wn.2d 875, 878, 133 P.3d 934 (2006). He contends that the services of Dr. Barnard and the investigator were necessary for him to present a defense and are thereby "expenses inherent in providing a constitutionally guaranteed jury trial" that RCW 10.01.160(2) forbids a court to impose on a defendant.

We find no improper delegation of authority by the trial court. It was the court, not the clerk, that imposed the special cost reimbursement, by including it in the $4,552.50 total costs imposed in the judgment and sentence. We also find an adequate segregation of the costs by the court, where the judgment and sentence incorporated the attached cost bill by reference. The statutes relied on by Mr. Powers do not require any particular form of segregation, and the incorporation of a cost bill prepared by a court

7

clerk is an adequate procedure for informing the defendant of each assessment taxed and for purposes of appeal. Any lack of clarity in listing costs as "DR" and "INV" was a problem that should have been raised in the trial court and has now been remedied by the State's response.

Defense expert and investigator expenses are not "expenses inherent in providing a constitutionally guaranteed jury trial" within the meaning of RCW 10.01.160(2). In *Diaz-Farias*, this court concluded that when the legislature used the phrase "expenses inherent in providing a constitutionally guaranteed jury trial" in that statute, it "'intended to encompass only expenses relating to a defendant's jury trial itself, not expenses associated with other constitutional rights that apply at the time of trial.'" 191 Wn. App. at 523 (quoting *State v. Ferman-Velasco*, 333 Or. 422, 41 P.3d 404 (2002)). Fees related to experts are an expense specially incurred by the State in prosecuting a defendant. *See Utter v. Dep't of Soc. & Health Servs.*, 140 Wn. App. 293, 311, 165 P.3d 399 (2007) (costs relating to a competency evaluation); *State v. Baggett*, 103 Wn. App. 564, 13 P.3d 659 (2000), *review denied*, 143 Wn.2d 1011, 21 P.3d 291 (2000) (expert witness costs).

We find no error.

## STATEMENT OF ADDITIONAL GROUNDS

In a pro se statement of additional grounds (SAG), Mr. Powers raises four. While his second ground claims ineffective assistance of counsel, which can be raised for the

first time on appeal, his first, third, and fourth are all issues that implicate RAP 2.5(a), under which issues are waived if not raised in the trial court.

"RAP 2.5(a) states the general rule for appellate disposition of issues not raised in the trial court: appellate courts will not entertain them." *State v. Guzman Nuñez*, 160 Wn. App. 150, 157, 248 P.3d 103 (2011), *aff'd and remanded sub nom. State v. Nuñez*, 174 Wn.2d 707, 285 P.3d 21 (2012) (citing *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988)). The rationale for refusing to review an issue raised for the first time on appeal is well settled—issue preservation helps promote judicial economy by ensuring "that the trial court has the opportunity to correct any errors, thereby avoiding unnecessary appeals." *State v. Robinson*, 171 Wn.2d 292, 304-05, 253 P.3d 84 (2011) (citing *Scott*, 110 Wn.2d at 685).

We first address the three grounds that implicate RAP 2.5(a) and then turn to Mr. Powers's claim of ineffective assistance of counsel.

*SAG No. 1.* Mr. Powers's first ground for relief is an alleged violation of his right to a speedy trial, based on a Hobson's choice he claims was presented by his last waiver of that right, in late July 2015, when he wanted the opportunity to work with his new lawyer, Mr. Chambers. With respect to this ground, Mr. Powers not only implicitly waived error by failing to raise it in the trial court, he signed explicit waivers. And under CrR 3.3(d)(3), by failing to file a motion objecting to his continued trial date within 10

9

days after notice, Mr. Powers lost his right to object that a trial did not take place within the time limits prescribed by the rule.

*State v. Michielli*, 132 Wn.2d 229, 937 P.2d 587 (1997), on which Mr. Powers relies, was not decided on speedy trial grounds. Instead, late-filed charges were dismissed in that case after the defendant successfully raised an issue of prosecutorial mismanagement.

*SAG No. 3.* Mr. Powers's third ground for relief boils down to a claim of instructional error. Because Mr. Powers was charged with assault in the second degree under RCW 9A.36.021(1)(c), the trial court instructed the jury on the required element that the assaults were with a deadly weapon. It also defined "firearm," and instructed the jury that a firearm is a deadly weapon. The special verdict forms completed by the jury stated that Mr. Powers "[w]as . . . armed with a firearm at the time of the commission of" the crimes of assault. CP at 84, 86.

The only flaw in the jury instructions that Mr. Powers identifies—and identifies too late—is that the jury instructions on the state's burden in obtaining the special verdicts stated that it must prove beyond a reasonable doubt that the defendant was "armed with a deadly weapon." CP at 81, 82. This was based on the State's proposed instructions, which included Washington Pattern Jury Instruction: Criminal (WPIC) 2.07.02, when it should have proposed WPIC 2.10.01 instead. See CP at 53, 26. The defense made no objection to these instructions at the instruction conference.

10

As pointed out in *Scott*, the general rule that we do not entertain issues not raised in the trial court has specific applicability with respect to claimed errors in jury instructions in criminal cases through CrR 6.15(c), requiring that timely and well stated objections be made to instructions given or refused "'in order that the trial court may have the opportunity to correct any error.'" 110 Wn.2d at 686 (quoting *City of Seattle v. Rainwater*, 86 Wn.2d 567, 571, 546 P.2d 450 (1976) *overruled on other grounds by State v. Blair*, 117 Wn.2d 479, 816 P.2d 718 (1991)). Mr. Powers does not suggest an exception to RAP 2.5(a) that allows him to challenge the instructions for the first time on appeal.[2]

*SAG No. 4.* Mr. Powers's fourth ground for relief is that the trial court erred in not inquiring whether he had a current or future ability to pay LFOs. RCW 10.01.160(3) provides that "the court shall not order a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the

---

[2] Mr. Powers also mentions *State v. Williams-Walker*, 167 Wn.2d 889, 896, 225 P.3d 913 (2010) in connection with SAG No. 3, but no *Blakely* problem (*Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004)) is presented. *Williams-Walker* actually undercuts any argument Mr. Powers might try to make, because it holds that sentence enhancements "must be authorized by the jury in the form of a special verdict" and "the sentencing judge can know which (if any) enhancement applies only by looking to the jury's special findings." *Id.* at 900-02. The court held in *Williams-Walker* that the court could not look to the jury's general verdict to infer and resolve ambiguity in the answer to the special verdict. Here, the instructions could have been more consistent, but the jury's special verdict answer that Mr. Powers was armed with a firearm was clear. It would be wrong under *Williams-Walker* to look to the jury instructions to infer ambiguity in that answer.

11

court shall take account of the financial resources of the defendant." In *State v. Blazina*, 182 Wn.2d 827, 834, 344 P.3d 680 (2015), our Supreme Court concluded that the legislature intended through the statute for "each judge to conduct a case-by-case analysis and arrive at an LFO order appropriate to the individual defendant's circumstances," requiring an individualized inquiry on the record. *Id.* at 834, 838. A *Blazina* inquiry is required only for discretionary LFOs. *State v. Clark*, 191 Wn. App. 369, 373, 362 P.3d 309 (2015).

Because Mr. Powers failed to object, we could decline to review this issue. *Blazina*, 182 Wn.2d at 834. A majority of the panel favors exercising our discretion to at least consider Mr. Powers's argument.

The trial court imposed $3,752.50 in discretionary LFOs. It was aware from Mr. Powers's interviews by Detective Gerry that Mr. Powers was 31 years old when interviewed and worked as a caretaker at the time of the crimes. Dr. Barnard's report, provided by the defense in support of its request for a downward departure from the standard range, generally recounted Mr. Powers's work history and stated he was a high school graduate with a Bachelor of Arts degree in international business.

As previously noted, the trial court asked Mr. Powers at sentencing whether there was any reason he was not capable of working, to which he responded, "Not at this time, no, Ma'am." RP at 244. In allocuting at sentencing, Mr. Powers told the court that if he received a long sentence, "[I]t won't do anything but hamper my ability to make

12

restitution and pay the substantial court costs and fines that I know I'm gonna settle with and, ultimately, just make amends for what I did." RP at 240. Again, he did not object when the trial court announced the costs it would impose.

Given his education and work background, the fact that Mr. Powers is currently 33 years old and will be released from prison before age 40, and his statements to the court, the trial court's inquiry was sufficient. We will not remand for a further inquiry.

*SAG No. 2.* We turn last to Mr. Powers's claim of ineffective assistance of counsel. He claims his trial lawyer was ineffective by failing to request instruction on, and advocate for, a diminished capacity defense.

Effective assistance of counsel is guaranteed by both the Sixth Amendment and article I, section 22 of the Washington Constitution. U.S. Const. amend. VI; Wash. Const. art. I, § 22; *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Mierz*, 127 Wn.2d 460, 471, 901 P.2d 286 (1995). To demonstrate ineffective assistance of counsel, a defendant must show two things: "(1) defense counsel's representation was deficient, *i.e.*, it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, *i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995) (citing *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987)). When a claim

13

can be disposed of on one ground, this court need not consider both prongs. *Strickland*, 466 U.S. at 697.

Washington courts strongly presume counsel's representation was effective. *McFarland*, 127 Wn.2d at 335. Deficient performance is not shown by matters relating to trial strategy or tactics. *See State v. Sardinia*, 42 Wn. App. 533, 542, 713 P.2d 122 (1986).

To prove diminished capacity, a defendant must show the crime charged includes a particular mental state as an element, present evidence of a mental disorder, and supply "expert testimony demonstrating the defendant suffered from a mental condition that impaired his . . . ability to form the requisite . . . intent." *State v. Eakins*, 127 Wn.2d 490, 502, 902 P.2d 1236 (1995); *State v. Atsbeha*, 142 Wn.2d 904, 921, 16 P.3d 626 (2001). "'Diminished capacity instructions are to be given whenever there is substantial evidence of such a condition and such evidence logically and reasonably connects the defendant's alleged mental condition with the inability to possess the required level of culpability to commit the crime charged.'" *State v. Cienfuegos*, 144 Wn.2d 222, 227-28, 25 P.3d 1011 (2001) (quoting *State v. Griffin*, 100 Wn.2d 417, 418-19, 670 P.2d 265 (1983)).

Failure of defense counsel to present a diminished capacity defense, where the facts support it, was held to satisfy both prongs of the *Strickland* test in *Thomas*. In that case, the theory of defense to a charge of felony flight from a police officer was that Thomas was too intoxicated to have formulated the required mental state of wanton or

14

willful disregard. 109 Wn.2d at 227. The diminished capacity instruction that her lawyer failed to request was entirely consistent with her theory of defense. In the absence of the instruction, the State argued to the jury that Thomas's intoxication actually *caused* the mental state required for the crime, while the instruction would have supported the contrary defense argument that her drunkenness *negated* it. *Id.* at 228. The Supreme Court concluded that a reasonably competent lawyer would have proposed an instruction based on pertinent cases. *Id.* at 229. Its finding of ineffective assistance was further supported by the defense lawyer's failure to ascertain that his expert on the effects of alcohol would not qualify as an expert, as a result of which the witness was not allowed to testify as one. *Id.* Neither failure could be explained as tactical.

Other cases have found that the failure to request a diminished capacity instruction is not ineffective assistance where the expert's opinion would not satisfy the standards for the diminished capacity defense. *State v. Harper*, 64 Wn. App. 283, 290, 823 P.2d 1137 (1992). It is not ineffective assistance where it is evidently tactical, with nothing to suggest the lawyers were not aware of the defense and where they instead pursued a defense more consistent with their client's statements about the incident. *In re Pers. Restraint of Woods*, 154 Wn.2d 400, 421, 114 P.3d 607 (2005), *overruled on other grounds by Carey v. Musladin*, 549 U.S. 70, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006).

Here, our presumption that counsel's decision was tactical finds much support in the record. While the penultimate paragraph of Dr. Barnard's report speaks of

15

"diminished capacity" for the alleged incidents, it was entirely based on Mr. Powers's self-reporting. And the circumstances Dr. Barnard equated with diminished capacity— "[Mr. Powers's] reasoning, judgement [sic], and impulse control were significantly impaired"—do not track the requirements for the legal defense. CP at 96. Mr. Powers's explanation of his actions to Detective Gerry had been that he was frightened and acted in self-defense, not that he was impaired by his low blood sugar, clinical depression, or regular marijuana use noted by Dr. Barnard. Mr. Chambers was clearly aware of Dr. Barnard's report because he provided it to the court in support of his request for a downward departure from the standard sentencing range. He essentially admitted he did not believe Dr. Barnard's findings provided a defense to the assault charges when he advocated that RCW 9.94A.535(1)(c) applied—telling the court that Mr. Powers's conduct had significantly been affected by duress, threat, or compulsion "insufficient to constitute a complete defense." RP at 236-37. Because deficient performance is not shown, we need not review prejudice.[3]

---

[3] Mr. Powers asked that we remand for a RAP 9.11 hearing and direct the trial court to take additional evidence on the issue of ineffective assistance of counsel, relying on *State v. Jones*, 183 Wn.2d 327, 352 P.3d 776 (2015). RAP 9.11 authorizes us, in our discretion, to direct that additional evidence be taken before the decision on review if

> (1) [A]dditional proof of facts is needed to fairly resolve the issues on review, (2) the additional evidence would probably change the decision being reviewed, (3) it is equitable to excuse a party's failure to present the evidence to the trial court, (4) the remedy available to a party through postjudgment motions in the trial court is inadequate or unnecessarily

16

No. 34006-6-III
*State v. Powers*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Siddoway, J.

WE CONCUR:

Lawrence-Berrey, A.C.J.

Pennell, J.

---

expensive, (5) the appellate court remedy of granting a new trial is inadequate or unnecessarily expensive, and (6) it would be inequitable to decide the case solely on the evidence already taken in the trial court.

RAP 9.11. We do not find these elements present in this appeal.

17