Korsmo, J.
¶1 Joshua Clark claims a right to have his unchallenged legal financial obligations (LFOs) considered initially on appeal pursuant to RAP 2.5(a)(2). We reject that argument and, in the unpublished portion of this case, also reject his CrR 3.3 challenge to his convictions for attempting to elude and possession of a controlled substance.
FACTS
¶2 This action is a companion to State v. Clark, 191 Wn. App. 369, 362 P.3d 309 (2015) (published in part) (Clark I). As with this case, the issues presented on appeal in Clark I involved an LFO challenge and a time for trial claim. The Clark I trial and sentencing occurred after the trial and sentencing in this case. Id. at 371, 376. We noted that scant attention was paid to LFOs at the sentencing in Clark I as the parties focused on the question of concurrent or consecutive sentencing. Id. at 376.
¶3 The focus of this sentencing hearing was on the State’s request for an exceptional sentence on the attempting to elude charge. The jury had returned a special verdict that others had been endangered by Mr. Clark’s driving, resulting in a 12 month enhancement to the base sentence. The State’s sentencing memorandum urged an exceptional sentence on the basis of the defendant’s 24 unscored misdemeanor convictions. It also detailed the financial costs and fines it was seeking. The prosecutor reiterated at sentencing most of the costs and fines he was seeking.
¶4 Defense counsel then addressed the court on the financial matters and alerted the judge that his client had *871 been assaulted in the jail and would have additional medical costs beyond the $95.41 mentioned in the State’s briefing; he suggested the State might need to set an additional hearing concerning the pending additional medical costs. Counsel agreed that the $95.41 was currently owing for medical costs and then urged the court to impose a mid-range sentence within the enhanced range resulting from the special verdict. Mr. Clark apologized for his behavior and asked for a treatment-based sentence if possible. The trial court imposed a 30 month sentence at the top of the enhanced sentence range rather than imposing an exceptional sentence. The court’s oral remarks did not mention LFOs, but the judgment and sentence form imposed a total of $2,145.41 in costs and fines, including the $95.41 sought for medical expense reimbursement. The judgment and sentence form also contained preprinted language indicating that the court had considered the defendant’s “future ability to pay legal financial obligations, including the defendant’s financial resources.” Clerk’s Papers at 46.
¶5 Mr. Clark timely appealed to this court. A panel considered the case without argument.
ANALYSIS
¶6 Mr. Clark asserts a right to have his LFO argument heard in this court as well as urging that we exercise our discretion to consider his claim. After first characterizing one of the LFOs imposed by the trial court, we ultimately conclude that RAP 2.5(a)(2) does not support Mr. Clark’s argument and decline to exercise discretion to consider his claim.
¶7 As noted in Clark I, numerous appeals in recent years have addressed the imposition of LFOs without the record reflecting that the trial court first had undertaken its RCW 10.01.160(3) obligation to consider the offender’s ability to pay those costs. 191 Wn. App. at 372-73. The statutory obligation only extends to the decision to impose costs *872 other than those mandated by the legislature. Id. at 373. Costs that are required by statute are not subject to this obligation. Among the mandatory costs are restitution, the crime victim assessment, the DNA collection fee, and the criminal case filing fee. Id. Most other costs, including witness costs, collection costs, and recoupment of the cost of trial counsel, are discretionary. Id. at 374. Clark I also determined that fines authorized by RCW 9A.20.021 are not “costs” subject to the statutory inquiry. Id. at 374-76.
¶8 Because the alleged error at issue in the LFO cases was the failure to comply with a statutory requirement, and in nearly all cases there was no objection in the trial court, the preliminary question was whether the belated challenge could even be raised on appeal in light of Washington’s policy of not entertaining arguments that had not been presented to the trial court. RAP 2.5(a). All three divisions of this court concluded that they could not be considered. Clark I, 191 Wn. App. at 373. Subsequently, the Washington Supreme Court ruled the issue was not one that could be raised as a matter of right and that the appellate courts had discretion to review or decline to review the issue. State v. Blazina, 182 Wn.2d 827, 830, 344 P.3d 680 (2015).
¶9 With this backdrop, we consider Mr. Clark’s latest LFO challenge. Initially, however, we need to resolve a preliminary question of how to characterize one of the financial obligations imposed by the court. There were $800 in mandatory costs (filing fee, crime victim assessment, DNA fee) and a $500 fine, thus placing $1,300 of the assessments beyond reach of the statutory inquiry. Another $495.41 (attorney fee recoupment, medical cost reimbursement) was assessed for clearly discretionary costs. It is unclear to us whether the $250 jury demand fee is a mandatory or discretionary cost.[1] As the parties do not directly address that fee in their briefing, we will assume *873 for purposes of this opinion that it is a discretionary cost. The remaining assessment is the $100 crime laboratory fee.
¶10 RCW 43.43.690(1) provides:
When an adult offender has been adjudged guilty of violating any criminal statute of this state and a crime laboratory analysis was performed by a state crime laboratory, in addition to any other disposition, penalty, or fine imposed, the court shall levy a crime laboratory analysis fee of one hundred dollars for each offense for which the person was convicted. Upon a verified petition by the person assessed the fee, the court may suspend payment of all or part of the fee if it finds that the person does not have the ability to pay the fee.
(Emphasis added.) The proceeds from this assessment are forwarded to the general fund and are to be used only for the crime laboratories. RCW 43.43.690(3).
¶11 This assessment is mandatory if a laboratory analysis was conducted. Upon conviction, the court “shall levy” the fee. Only on a “verified petition” by the offender may the court suspend some or all of the fee if it determines there is no ability to pay. Unlike discretionary costs, the laboratory fee is assessed and then, perhaps, revised if the defendant provides adequate proof. In contrast, the process is reversed under RCW 10.01.160(3). Under that provision, discretionary costs may only be imposed if the court has first determined ability to pay.
¶12 The crime laboratory fee is mandated by statute. Accordingly, $1,400 of the LFOs assessed against Mr. Clark are not subject to initial challenge on appeal, while only $745 is subject to our discretionary decision whether or not to review the argument.
¶13 Mr. Clark, however, argues that RAP 2.5(a)(2) provides a vehicle to mandate that we consider his challenges *874 to the discretionary LFOs. That provision provides that “a party may raise the following claimed errors for the first time in the appellate court:... (2) failure to establish facts upon which relief can be granted.” This has long been the rule in Washington. See O’Toole v. Faulkner, 29 Wash. 544, 548, 70 P. 58 (1902) (failure to state a claim for relief could be raised for first time in the Supreme Court per statute). The current text was considered to more accurately reflect modern practice than the former “failure to state a claim” language. See RAP 2.5 cmt. a at 86 Wn.2d 1152 (1976).
 ¶14 Traditionally, this provision simply has been the basis for considering initially on appeal a challenge to the prevailing party’s evidence due to failure to establish some element of its case. Thus, in Roberson v. Perez, 156 Wn.2d 33, 39-40, 123 P.3d 844 (2005), a tort judgment for negligent investigation was reversed on appeal because the plaintiff had not been the subject of a police investigation or a harmful placement decision. Similarly, a claim of unlawful age discrimination failed under RAP 2.5(a)(2) when the defense pointed out on appeal that the plaintiff was too young to bring a claim under the statute. Gross v. City of Lynnwood, 90 Wn.2d 395, 400, 583 P.2d 1197 (1978); accord In re Adoption of T.A. W., 188 Wn. App. 799, 808, 354 P.3d 46 (2015) (failure to prove compliance with Indian Child Welfare Act considered initially on appeal), review granted, 184 Wn.2d 1040 (2016). RAP 2.5(a)(2) has not been applied in cases where the facts were unclear or agreed by the parties in the trial court. E.g., Mukilteo Ret. Apts., LLC v. Mukilteo Inv’rs LP, 176 Wn. App. 244, 310 P.3d 814 (2013) (party who agreed at trial contract was valid could not use RAP 2.5(a)(2) to argue lack of proof of element on appeal); Cole v. Harveyland, LLC, 163 Wn. App. 199, 258 P.3d 70 (2011) (unclear facts and uncertain burden of proof).
¶15 However, this rule also has been cited as the basis for addressing other issues on appeal that had not been argued to the trial court. For instance, Division Two of this court used the rule to dismiss a case where the appellant *875 failed to establish her standing to contest an adoption. Mitchell v. John Doe, 41 Wn. App. 846, 848, 706 P.2d 1100 (1985). The rule also has been cited as the basis for considering on appeal a statute and a local court rule that were not cited to the trial court. Stedman v. Cooper, 172 Wn. App. 9, 24, 292 P.3d 764 (2012) (change in statute wrought by intervening Supreme Court decision was dispositive on whether appellant had proved her entitlement to fees under the statute); Batten v. Abrams, 28 Wn. App. 737, 742, 626 P.2d 984 (1981) (parties failed to comply with mandatory local court rule, leaving trial court unable to impose discovery sanctions).
¶16 With particular emphasis on Stedman, Mr. Clark argues that insufficient facts support the trial court’s determination that he has the ability to pay his LFOs, thus leaving the trial court without statutory authority to impose them. Br. of Appellant at 7-8. While creative, this expansion of the rule’s meaning is unjustified and distorts the purpose of the provision.
¶17 In each of the noted instances where RAP 2.5(a)(2) was applied, the “fact” in question was one that went to an element of the case such as the age of the complainant alleging age discrimination or the failure to comply with the Indian Child Welfare Act in the adoption of a Native American child. Gross, 90 Wn.2d at 400; T.A.W., 188 Wn. App. 799. Even where the argument was rejected, the “fact” in question still went to an element of the cause of action. For instance, in Cole the fact in question was the number of employees working for the defendant, a statutory element of an exemption from the plaintiff’s employment law claim. 163 Wn. App. at 205-12. In each of these instances, the “fact” was one essential to the survival of the cause of action.[2] The Mitchell ruling on standing similarly *876 involved a “fact” essential to the ability to maintain the action—the appellant’s ability to challenge the adoption. 41 Wn. App. at 846.
¶18 The case factually most supportive of Mr. Clark’s position is Batten. Properly read, however, Batten is consistent with the other authorities. There, the respondents had failed to confer with the appellant’s attorney, as required under the local court rules, before noting their motion for discovery sanctions. 28 Wn. App. at 742. Citing to Gross, this court concluded that RAP 2.5(a)(2) allowed appellant to raise the noncompliance argument despite failing to object in the trial court. Id. We viewed the rule as the cause of action for pursuing the discovery sanctions and concluded that respondents had failed to prove a critical fact necessary for their recovery. Id. at 742-43.
¶19 In contrast, the “fact” at issue here—whether the trial court complied with its statutory obligation before imposing the discretionary LFO component of the sentence—did not touch on the elements of the State’s cause of action for attempting to elude and possessing a controlled substance. It addressed a procedural question concerning the trial court’s statutory sentencing obligations. This situation is not a concern of RAP 2.5(a)(2).[3]
*877 ¶20 Here, the trial court’s compliance with RCW 10.01-.160(3) was not a component of the State’s cause of action. Instead, it involved a procedural error that “is unique to these defendants’ circumstances.” Blazina, 182 Wn.2d at 834. It was for that very reason that the appellate courts are permitted, but not required, to consider an LFO issue on appeal. Id. The statutory right of the defendant to individualized LFO sentencing simply is not a requirement of the cause of action against the defendant. It is an independent obligation of the trial court.
¶21 RAP 2.5(a)(2) should not be read to permit a party as a matter of right to challenge on appeal each and every action that he did not challenge at trial. It should be read, as it was intended to be read, as applying solely to insufficient proof of an essential element of a party’s case. That description does not apply to the trial court’s actions, including its unchallenged failure to conduct an individualized inquiry on ability to pay discretionary LFOs in this case. RAP 2.5(a)(2) does not mandate that we consider Mr. Clark’s belatedly raised LFO challenge.
¶22 We likewise decline to exercise our discretion to consider his challenge under these circumstances. His trial counsel spoke to, and did not contest, the discretionary costs relating to Mr. Clark’s medical bills. He had the opportunity to address the other LFOs and chose not speak to them. Instead, he successfully focused his argument against the requested exceptional sentence. The LFOs were not a significant concern.
¶23 The judgment and sentence is affirmed.
¶24 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder, having no precedential value, shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
Siddoway, J., concurs.

 Compare RCW 10.01.160(2) (which indicates in relevant part that the jury fee ‘under RCW 10.46.190 may be included in costs the court may require a defendant *873 to pay”), with RCW 10.46.190 (stating that “every person convicted . . . shall be liable to all the costs . . . including ... a jury fee . . . for which judgment shall be rendered and collected”). See also State v. Diaz-Farias, 191 Wn. App. 512, 524, 362 P.3d 322 (2015) (concluding jury demand fee could be imposed per RCW 10.01-.160(2)); State v. Munoz-Rivera, 190 Wn. App. 870, 894, 361 P.3d 182 (2015) (defendant considered jury demand fee as mandatory cost).

 Stedman is consistent with this reading, but is best understood as a retroac-tivity case. The law changed while the case was on appeal, scrambling the “elements” of the cause of action by revising what could be considered in determining which party prevailed at a trial de novo following an arbitration *876 award. The effect of the change in law was to leave the respondent with insufficient evidence to support part of the damages element of her case, a classic RAP 2.5(a)(2) concern. 172 Wn. App. at 24-25.

 Our reading is consistent with that in Mukilteo. There, Division One of this court stated that the rule was “limited to circumstances wherein the proof of particular facts at trial is required to sustain a claim.’’ 176 Wn. App. at 246. At issue on appeal was the validity of the option contract, a fact that typically is an element of a breach of contract case. Mukilteo described its test in terms of whether relief could be granted in the absence of the challenged fact. Id. Although appellant had admitted in the pretrial pleadings that the contract was a valid agreement, on appeal it tried to argue that respondents had not established the validity of the contract at trial. That concession rendered proof at trial of the contract’s validity unnecessary. Id. at 254-55, 259. While the pleadings may have eliminated that factual issue from the trial, the fact otherwise seems to fail the Mukilteo test because it normally would be necessary to establish the contract’s validity in order to obtain relief. We believe Mukilteo is better read as a case of the appellant waiving the proof requirement and, therefore, being unable to assert a right to review under RAP 2.5(a)(2).