

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37618-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SHALIN E. ALLTUS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Following a court-ordered resentencing, Shalin Alltus challenges

a scrivener's error in her amended judgment and sentence and, having been found

indigent, challenges what she contends are unauthorized discretionary costs. Remand for

correction of the scrivener's error is required. We exercise our discretion to order

resentencing at which Ms. Alltus may seek waiver of two discretionary costs.

FACTS AND PROCEDURAL BACKGROUND

In October 2014, Shalin Alltus, then 16 years old, participated in shooting her uncle, who died from his wounds. *State v. Alltus*, 10 Wn. App. 2d 193, 195, 447 P.3d 572, *review denied*, 458 P.3d 1181 (2019). She and her friend Parker Bachtold, who fired the fatal shotgun blast, took the uncle's truck and guns and drove to Oregon. *Id.* at 196. The State charged Ms. Alltus with first degree aggravated murder, first degree robbery, theft of a motor vehicle, two counts of theft of a firearm, and two counts of second degree unlawful possession of a firearm by a juvenile. *Id.* at 197.

A jury did not find aggravators for the first degree murder charge but otherwise found Ms. Alltus guilty as charged. *Id.* at 198. On appeal, this court affirmed the convictions but remanded for a resentencing at which Ms. Alltus would have a sufficient opportunity to present mitigation evidence and argument. *Id.* at 200, 203.

At resentencing, the court imposed a 360-month sentence for the murder and shorter concurrent sentences for the remaining convictions. The court found Ms. Alltus's youthfulness was a mitigating factor that allowed the court to forego sentences on the firearm enhancements, resulting in a total term of confinement of 360 months. While the sentence imposed was for only first degree premeditated murder, her amended judgment and sentence includes one reference to her having been convicted of aggravated first degree murder.

The court found Ms. Alltus indigent. It imposed a condition of release requiring her to pay the costs of community supervision upon her release and $700 in legal financial obligations (LFOs), including a $500 victim assessment, $100 crime lab fee, and $100 deoxyribonucleic acid (DNA) collection fee. She appeals.

ANALYSIS

Three issues are raised by Ms. Alltus's appeal.

I.      LFOs

*Supervision fees.* Ms. Alltus contends the court erred when it imposed a condition of community custody requiring her to pay supervision fees as determined by the Department of Corrections. She argues that supervision fees are a discretionary LFO, she is indigent, and discretionary LFOs cannot be imposed on an indigent defendant. She argues the error may be raised for the first time on appeal because the court lacked the authority to impose the condition. The State does not object to remand for the court to consider waiver of the supervision fees.

In resentencing Ms. Alltus, the trial court found her indigent but otherwise said little about her ability to pay LFOs. There was no suggestion that her financial situation had changed from the time of her original sentencing, and the court appears to have relied

3

on the LFOs it originally imposed. We take judicial notice that at the original sentencing, the court appears to have intended to impose only mandatory LFOs.[1]

Supervision fees are governed by RCW 9.94A.703(2), which provides that "[u]nless waived by the court, as part of any term of community custody, the court shall order an offender to . . . [p]ay supervision fees as determined by the [Department of Corrections]." Because supervision fees are waivable, they are discretionary, but they are not a "cost" under RCW 10.01.160 that is prohibited from being imposed on an indigent defendant. *See State v. Spaulding*, 15 Wn. App. 2d 526, 536-37, 476 P.3d 205 (2020).

Supervision fees are typically imposed by boilerplate language in the judgment and sentence that can be overlooked. *See* Clerk's Papers (CP) at 197 (Am. Judgment & Sentence, Section 4.2(B)(7)). We sometimes exercise our discretion to entertain a challenge to such fees for the first time on appeal when the record suggests, and the State agrees, that the sentencing court likely did not intend to impose them. Here, a ministerial error will require that we remand for a correction to the amended judgment and sentence. Since the State does not object, we order resentencing at which Ms. Alltus may ask the court to waive imposition of the supervision fees.

---

[1] At the original sentencing hearing, the court commented on Ms. Alltus's age and lack of work experience in identifying costs it would *not* impose. It continued, "I'm going to impose the crime lab fee, the crime victims and the DNA. Those are the mandatory. I'm going to impose those." Report of Proceedings (Nov. 17, 2014) at 251, *State v. Alltus*, No. 34677-3-III (Wash. Ct. App.). Under ER 201(c), we may take judicial notice of adjudicative facts from another proceeding not for their truth, but to determine what transpired.

*Crime lab fee.* Ms. Alltus also contends that in light of her indigence, the sentencing court erred when it imposed a $100 crime lab fee. Under RCW 43.43.690, when a defendant is convicted of a crime and an analysis is performed by a state crime laboratory,

> the court *shall* levy a crime laboratory analysis fee of one hundred dollars for each offense for which the person was convicted. Upon a verified petition by the person assessed the fee, the court may suspend payment of all or part of the fee if it finds that the person does not have the ability to pay the fee.

(Emphasis added.)

This court found the crime lab fee to be a "cost" within the meaning of RCW 10.01.160(2) in *State v. Malone*, 193 Wn. App. 762, 764, 376 P.3d 443 (2016), and following amendment in 2018, RCW 10.01.160(3) provides that the court "shall not order a defendant to pay costs if the defendant at the time of sentencing is indigent as defined in RCW 10.101.010(3) (a) through (c)." LAWS OF 2018, ch. 269, § 6(3). The crime lab fee could constitute an "expense[ ] specially incurred by the state in prosecuting the defendant" within the meaning of RCW 10.01.160(2). But it is more specifically addressed in RCW 43.43.690 RCW, set forth above, which treats it as mandatory, subject to suspension after it has been imposed. *State v. Clark*, 195 Wn. App. 868, 873, 381 P.3d 198 (2016); *State v. Johns*, 15 Wn. App. 2d 775, 778, 477 P.3d 522, *review denied*, 197

5

Wn.2d 1008, 484 P.3d 1261 (2021).[2]  In construing conflicting statutes, the specific

statute prevails over a general statute.  *In re Estate of Kerr*, 134 Wn.2d 328, 343, 949

P.2d 810 (1998).  Where, as here, the legislature enacts a general statute after a specific

statute, we construe "the original specific statute as an exception to the general statute,

unless expressly repealed."  *Residents Opposed to Kittitas Turbines v. State Energy*

*Facility Site Evaluation Council*, 165 Wn.2d 275, 309, 197 P.3d 1153 (2008).

The fee is therefore mandatory, subject to suspension.  Since we are remanding for

other reasons, Ms. Alltus may submit a verified petition at resentencing in support of

suspension of the fee.

II.       SCRIVENER'S ERROR IN SENTENCING PROVISIONS

Ms. Alltus points out that while the jury found none of the aggravators charged in

support of aggravated first degree murder and the sentence imposed was for first degree

premeditated murder, her amended judgment and sentence includes an incorrect

statement that she was convicted of aggravated first degree murder.  The State concedes

error.

---

[2] Requiring a verified petition to obtain suspension of the $100 fee seems unreasonably burdensome and cumbersome, now that sentencing courts necessarily consider indigence for other purposes.  The verified petition requirement dates back to 1992.  LAWS OF 1992, ch. 129, § 2.  We encourage the legislature to revisit it.

Section 2.1 of the amended judgment and sentence (Findings: Current Offenses) correctly states that Ms. Alltus was found guilty, in count 1, of premeditated first degree murder. Later language in the same section dealing with special verdicts is checked, however, and states, "[X] Count 1, is aggravated murder in the first degree committed while the defendant was [X] 16 or 17 years of age when the offense was committed." CP at 193 (bracketing in original). This is clearly a scrivener's error. A scrivener's error "is one that, when amended, would correctly convey the intention of the court." *State v. Davis*, 160 Wn. App. 471, 478, 248 P.3d 121 (2011). The proper remedy for a scrivener's error is to remand to correct the error in the judgment and sentence. *E.g.*, *State v. Makekau*, 194 Wn. App. 407, 421, 378 P.3d 577 (2016).

Ms. Alltus contends that section 4.1(b) of the amended judgment and sentence is also incorrect in indicating that she was sentenced to a maximum term of confinement of life for aggravated first degree murder. Here, we disagree. Section 4.1 includes alternative "confinement" subsections (a) and (b), with (a) applying when the offender is sentenced under RCW 9.94A.589 and (b) applying when a juvenile is sentenced under the aggravated murder provision, RCW 10.95.030. The trial court correctly completed subsection (a) rather than (b). The preprinted maximum term of "Life" under subsection (b) does not create any ambiguity.

We remand with directions to correct the erroneously-checked box in section 2.1 of the amended judgment and sentence, and for the court to consider Ms. Alltus's request for waiver of supervision fees and any petition for waiver of the crime lab fee.[3]

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Staab, J.

---

[3] The State volunteers that the DNA collection fee should be suspended because Ms. Alltus's DNA was collected upon conviction. RCW 43.43.7541 provides: "Every sentence imposed for a crime specified in RCW 43.43.754 *must* include a fee of one hundred dollars unless the state has previously collected the offender's DNA as a result of a *prior conviction*." (Emphasis added.)

We accept the State's representation that Ms. Alltus's DNA has been collected, but the record suggests it was collected as a result of this conviction, not a prior one. Whatever amount she has paid since the original sentence will be credited toward the LFOs that remain after the second amendment to her judgment and sentence.