# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of | No. 59855-8-II |
| MICHAEL J. BOROVINA, | |
| Appellant, | |
| and | |
| VERONICA K. A. BOROVINA, | UNPUBLISHED OPINION |
| Respondent. | |

GLASGOW, J.—Michael and Veronica Borovina[1] were married for just over seven years. They agreed to end their marriage in 2023 and negotiated the terms of their dissolution without representation. Both agreed that Michael, who made significantly more per year than Veronica, should pay spousal support. In text messages they "agree[d] to . . . $2,000 a month for 3 years." Clerk's Papers (CP) at 25. Michael claims the text messages reflect their final agreement, but according to Veronica, they continued negotiating after the text messages and they eventually agreed to spousal support with no end date.

Michael drafted the parties' petition for dissolution, associated findings, and proposed dissolution decree. These documents stated that Michael planned to pay Veronica $2,000 per

---

[1] Because they share a last name, we refer to Michael and Veronica by their first names for clarity.

month in spousal support with no end date. Both parties signed the documents 10 days after the text message was sent. The court entered the findings and decree as written.

Several months later, Michael moved to vacate the spousal support term under CR 60(b)(1) for mistake and CR 60(b)(11) for an extraordinary reason justifying relief, and the trial court denied his motion.

On appeal, Michael claims the lack of end date for spousal support was a mistake, but he does not otherwise challenge the trial court's findings of fact. Michael argues that the trial court abused its discretion by denying his motion to vacate under CR 60(b)(1) and (b)(11). He argues for the first time on appeal that CR 60(b)(4) provides an additional basis to vacate because Veronica failed to disclose the missing spousal support term to him in violation of her fiduciary duty.

We hold that the trial court did not abuse its discretion by denying Michael's motion to vacate under CR 60(b)(1) because substantial evidence supported its finding that the parties continued negotiating after the text exchange and there was no mutual mistake. Michael raises irregularity under CR 60(b)(1) for the first time on appeal, and we decline to consider that issue. We also hold that the trial court did not abuse its discretion by denying his motion to vacate under CR 60(b)(11) because Michael does not allege any extraordinary circumstances of the variety or degree contemplated by the rule. Finally, we need not reach Michael's CR 60(b)(4) claim raised for the first time on appeal because he does not satisfy RAP 2.5(a)(2). Even if we were to reach this claim, he does not establish fraud or misrepresentation by clear and convincing evidence. We hold that the trial court did not abuse its discretion, affirm the trial court's denial of Michael's motion to vacate, and grant attorney fees to Veronica.

FACTS

I. BACKGROUND

Michael and Veronica Borovina married in September 2015. They were married for just over seven years and agreed to end their marriage in January 2023 when she was in her late 40s and he was in his early 50s. They had no dependent children. They did, however, have an array of community assets to divide during their dissolution, including two houses, two vehicles, and Michael's retirement fund, as well as other assets and personal property. They also had more than $800,000 in debt, including mortgages and car loans.

As a deputy sheriff in San Francisco County, Michael reported an annual salary of at least $154,466.00. With overtime hours, he earned significantly more than that. Veronica worked part-time as a nanny and reported monthly earnings of $2,796.34, annualized to $33,556.08.

Because of their disparate incomes, both parties agreed that Michael should pay Veronica spousal support. Below is a text message exchange dated April 14, 2023:

So let's just wrap all this up and move in with our lives . I'll agree to the $2,000 a month for 3 years , I keep profit from house sale . I'll take over car , you keep profits from Michelle's home ( when she buys you out ), and you keep your retirements . I don't want to fight I really don't

Yes ?



CP at 25. According to Veronica, the parties continued to negotiate over the phone after this text exchange. Several days after the text conversation, Michael drafted a dissolution petition. Under its terms, each party would receive one home, one car, and specified personal property, along with approximately half of the couple's debt. Michael would keep his retirement account.[2] The petition also stated that Michael should pay spousal support in the amount of "$2,000.00 every month beginning April 30, 2023." CP at 3. The space for an end date for spousal support was left blank. In April 2023, Michael signed the petition, and Veronica signed a joinder agreeing to its terms.

Michael also prepared a dissolution decree, which included the same terms as the petition and indicated that the parties had no enforceable separation contract. The decree stated that Michael would pay $2,000 per month starting on April 30, 2023, but did not specify an end date, payment schedule, or any other details about the spousal support payment. It said that "spousal support will end when either spouse dies, or the spouse receiving support gets married or registers a new domestic partnership, unless expressly stated below." CP at 14. Nothing was stated below. The accompanying findings and conclusions indicated that "[s]pousal support was requested" and

---

[2] Veronica's sworn statement that Michael's retirement account was an asset she and Michael planned for him to retain is uncontested. CP at 73. Although Michael listed a retirement account as a debt in the dissolution petition and order, the other uncontested evidence in the record shows the retirement account was an asset.

"should be ordered because [Veronica] has the need for spousal support and [Michael] has the ability to pay." CP at 7. Both parties signed the decree Michael prepared and verified its findings and conclusions under oath. Neither party was represented by an attorney.

Michael started paying spousal support in April 2023 in accordance with the agreement. Michael and Veronica mailed the dissolution petition and decree to the superior court, and the court filed them in May 2023. The trial court entered Michael and Veronica's agreed dissolution decree and findings in September 2023.

In November 2023, Veronica began failing to make vehicle payments in violation of the dissolution decree. Michael's credit score was affected by the missed payments, and he met with an attorney. While meeting with counsel, Michael says he discovered that he and Veronica "had mistakenly failed to include an end date on spousal support" in their dissolution documents. CP at 22. But Veronica says that Michael had "let go of his desire for spousal support to have a specific end date" by the time she joined the petition, and she "would not have agreed" to its terms if he had not. CP at 72-73.

## II. PROCEDURAL HISTORY

In January 2024, Michael filed a motion to vacate and correct the decree's lifetime spousal support term under CR 60(b). CR 60(b) allows trial courts to vacate a final judgment under specific circumstances.

Michael argued that the trial court should have vacated and corrected the spousal support term pursuant to CR 60(b)(1), which allows for vacation due to mistake, because both parties intended to include an end date and the exclusion was a mutual mistake or scrivener's error. Additionally, he asserted that Veronica "was aware of the mistake and hoped to benefit from it."

5

CP at 107-08. However, Michael did not raise CR 60(b)(4), which provides a basis to vacate due to fraud, misrepresentation, or other misconduct.

Michael also argued that the trial court should vacate the spousal support term under CR 60(b)(11), which allows vacation for "[a]ny other reason justifying relief," because "paying lifetime support after a seven-year marriage due to omitting an end date would fall within the extreme and unexpected situations" contemplated by the rule. CR 60(b)(11); CP at 108.

In response, Veronica argued that both parties agreed to indefinite spousal support, and if any mistake occurred, it was unilateral and did not justify vacation under CR 60(b)(1). Additionally, she argued that the text messages Michael used to show mutual mistake were inadmissible under the parol evidence rule, which prevents admission of evidence contradicting a written contract, and ER 408, which prevents admission of certain evidence from settlement negotiations.

Veronica also argued that no extraordinary circumstances existed under CR 60(b)(11) because there had been no change in the law, no action resulting in a significant portion of their agreement going unmet, and no violation of public policy justifying vacation. She argued that vacating the term would violate the public policy of favoring finality in dissolution settlements.

The trial court denied Michael's motion to vacate. It made findings of fact consistent with the facts recited above. Relevant to this appeal, the trial court found that Michael and Veronica had other conversations about the terms of their dissolution outside the April 14 text messages. The trial court found that the text messages did not address all the parties' assets and liabilities. The trial court also found that Michael drafted the petition and dissolution decree, neither of which specified an end date for spousal support.

The trial court then adopted several conclusions of law. It concluded that judgments obtained by agreement can only be changed if obtained by fraud or mutual mistake, or if consent was not given. It concluded that while the April 14 text messages could be considered as evidence, the court found the messages "[did] not show the parties' entire agreement" because they set out only some of the terms of the dissolution. CP at 150 (Conclusion of Law (CL) 2). It then concluded that "any mistake [was] a unilateral mistake of [Michael's]." CP at 151 (CL 8).

The trial court also concluded that decrees will not be vacated based on financial disparity or unfairness alone. It concluded that because "property division and spousal support are inextricably linked," "[a]n overall equitable final order cannot be achieved by considering one issue exclusive of the other." CP at 150-51 (CL 3). It then concluded that Michael failed to demonstrate that the parties' overall division of assets and liabilities was such that he was "likely to prevail in limiting support to only three years" if the parties resumed litigation. CP at 152 (CL 9).

Finally, the trial court concluded that Michael "made no claim which justifies relief" under CR 60(b)(11), and "there [were] no conditions which justif[ied] reopening" the dissolution decree. *Id.* (CL 10, 11).The trial court ultimately denied the motion to vacate.

Michael appeals. He does not formally assign error to any of the trial court's findings of fact.

ANALYSIS

I. CR 60(B) MOTION

The Washington Supreme Court has recognized that financial interests in family law cases "are best served by finality," so "trial court decisions in a dissolution action will seldom be changed

upon appeal." *In re Marriage of Landry*, 103 Wn.2d 807, 809, 699 P.2d 214 (1985). However, CR 60(b) allows trial courts to vacate a final judgment under limited circumstances, including when the judgment has been obtained by mistake or misconduct, or when extraordinary circumstances justify vacation. CR 60(b)(1), (4), (11); *Shandola v. Henry*, 198 Wn. App. 889, 895, 396 P.3d 395 (2017). CR 60(b) motions are not intended to correct errors of law, which are properly addressed on direct appeal. *Burlingame v. Consol. Mines & Smelting Co.*, 106 Wn.2d 328, 336, 722 P.2d 67 (1986).

Our review of an order under CR 60(b) is limited to the trial court's decision on the motion to vacate; we do not reach the underlying order. *In re Marriage of Persinger*, 188 Wn. App. 606, 609, 355 P.3d 291 (2015). We review CR 60(b) rulings for abuse of discretion. *In re Marriage of Bresnahan,* 21 Wn. App. 2d 385, 406, 505 P.3d 1218 (2022). Abuse of discretion "occurs when a decision is manifestly unreasonable or based on untenable grounds or reasons." *In re Marriage of Mishko & Kehr*, 23 Wn. App. 2d 571, 577, 519 P.3d 240 (2022). A "decision is based on untenable reasons 'if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard.'" *Id.* (quoting *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997)).

We review the trial court's factual findings for substantial evidence and its conclusions of law de novo. *Bresnahan*, 21 Wn. App. 2d at 406-07. "We do not assess credibility or weigh evidence." *Id.* at 407.

As an initial matter, it bears clarification that the dissolution decree in this case is a judgment obtained by agreement. The Washington Supreme Court has recognized that "[t]he law favors settlements, and consequently it must also favor their finality." *Haller v. Wallis*, 89 Wn.2d

539, 544, 573 P.2d 1302 (1978). Here, the trial court entered the dissolution decree as Michael drafted it, consistent with the parties' agreed petition for dissolution. Both parties signed the petition and the decree. To the extent Michael argues that the trial court should not have applied legal standards associated with motions to vacate judgments that were obtained by agreement, we reject that argument.

A.      Mistake and Irregularity Under CR 60(b)(1)

Michael argues two bases for vacation under CR 60(b)(1): mistake and irregularity.

First, Michael argues that the trial court should have granted his motion to vacate the lifetime spousal support term based on mistake under CR 60(b)(1) because the parties agreed to a three-year term but mistakenly omitted the end date from the dissolution petition and decree. Michael also challenges the trial court's finding that his mistake was unilateral, arguing that the court abused its discretion by failing to consider the April 14 text messages as evidence of mutual mistake.

Michael further contends that even if his mistake was unilateral, his mistake still justified vacation because Veronica breached her fiduciary duty "by failing to disclose his oversight"; however, CR 60(b)(4), not (1), covers fraud, misrepresentation, and other misconduct. Br. of Appellant at 20.

Mutual mistake, not unilateral mistake, is a valid basis for setting aside judgments obtained by agreement under CR 60(b)(1). *Ha v. Signal Elec., Inc.*, 182 Wn. App. 436, 453, 332 P.3d 991 (2014). Here, although Michael fails to separately challenge in his assignments of error the trial court's finding that there was merely a unilateral mistake, his description of the issues is broad enough to encompass his challenge. *See* RAP 10.3(g). Substantial evidence supports the trial

court's finding that there was no mutual mistake. The existence of the dissolution petition, drafted and signed more than a week after the text message exchange occurred, suggests that the parties had further discussions about the terms of their agreement beyond that exchange. The trial court was correct that other terms covered in the petition and draft decree were not included in the text negotiations, making it clear the parties engaged in additional negotiations. While Michael argues that the text messages represent the parties' agreement on the spousal support term, Veronica stated that the parties continued to speak over the phone and that Michael had "let go of his desire for spousal support to have a specific end date" by the time she joined the petition. CP at 72. Moreover, the parties agreed that there was not a separation contract.

The trial court did not fail to consider the text messages. Instead, it credited Veronica's explanation and found that "[i]t is apparent from the single text message conversation offered . . . that the parties were attempting to settle the terms of their divorce, and that there had been other discussions." CP at 149 (Finding of Fact 3). "We do not assess credibility or weigh evidence." *Bresnahan*, 21 Wn. App. 2d at 407. The findings support the trial court's conclusion that there was no basis to vacate the lifetime spousal support term based on mutual mistake.

Second, Michael argues that the lifetime spousal support term should be vacated under CR 60(b)(1) because the trial court's failure to apply the factors set forth in RCW 26.09.090(1) before approving the decree constitutes an irregularity. RCW 26.09.090(1)(a)-(f) provides a list of factors a trial court must consider when imposing spousal support. Michael raises this argument for the first time on appeal.

Appellate courts generally will not consider issues that were not raised below. RAP 2.5(a); *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). Because Michael did not bring up

irregularity in his original motion to vacate, and he does not argue that an exception in RAP 2.5 applies, we need not reach irregularity as a basis to vacate.

Even if we were to reach Michael's irregularity argument, judgments vacated for irregularity under CR 60(b)(1) "typically involve procedural defects unrelated to the merits." *In re Marriage of Tang*, 57 Wn. App. 648, 654, 789 P.2d 118 (1990). No such defect occurred here.

In *Curtis*, Division Three held that the trial court did not abuse its discretion by accepting the parties' property settlement agreement without applying similar statutory factors from RCW 26.09.080, which governs the disposition of property in dissolution proceedings. *In re Marriage of Curtis*, 106 Wn. App. 191, 198, 23 P.3d 13 (2001). Similarly, here, the trial court was not obliged to independently apply the statutory spousal support considerations where the parties presented to the court their agreement as to spousal support. "Nothing in law, public policy or reason prohibits a former spouse from voluntarily and formally obligating [themselves] to do more than the law requires in providing support for a former spouse." *Untersteiner v. Untersteiner*, 32 Wn. App. 859, 864, 650 P.2d 256 (1982) (emphasis omitted). Thus, the trial court in this case acted within its discretion to approve the parties' agreement without applying the statutory factors. The trial court's failure to discuss statutory factors does not constitute an irregularity justifying vacation in these circumstances where the parties presented the trial court with an agreed petition and decree.

In sum, the trial court did not abuse its discretion by declining to vacate the lifetime spousal support term for mistake or irregularity under CR 60(b)(1).

B.      Any Other Reason Justifying Relief Under CR 60(b)(11)

Michael also argues that the trial court should have granted his motion to vacate the lifetime spousal support term under CR 60(b)(11) because of "extraordinary circumstances" constituting a

"manifest injustice." Br. of Appellant at 23. He provides three alleged bases for vacation under CR 60(b)(11): Veronica's failure to disclose the omitted term to Michael in violation of her fiduciary duty, the trial court's failure to consider the statutory spousal support factors set forth in RCW 26.09.090(1), and "the manifest injustice of imposing perhaps a $700,000 perpetual-lifetime-maintenance lien on [Michael's] future earnings, essentially requiring him to work until he dies." Br. of Appellant at 22-23.

CR 60(b)(11) "is a catchall provision intended to serve the ends of justice in extreme, unexpected situations and when no other subsection of CR 60(b) applies. The provision applies to extraordinary circumstances involving irregularities extraneous to the proceeding." *Shandola*, 198 Wn. App. at 895 (citation omitted). "The courts have stressed the need for the presence of 'unusual circumstances' before CR 60(b)(11) will be applied." *In re Marriage of Yearout*, 41 Wn. App. 897, 902, 707 P.2d 1367 (1985) (quoting *In re Adoption of Henderson*, 97 Wn.2d 356, 360, 644 P.2d 1178 (1982)).

For example, when the United States Supreme Court decided that military retirement benefits could not be divided in dissolution decrees and Congress contradicted this decision 20 months later with responding legislation, this court held that "extraordinary circumstances" justified vacating decrees finalized in the short period between the decision and the legislation. *In re Marriage of Flannagan*, 42 Wn. App. 214, 215, 222, 709 P.2d 1247 (1985). Washington courts have also held that extraordinary circumstances existed under CR 60(b)(11) where "a material condition of the settlement" was not met, such as where one party failed to transfer ownership interest that "represented a significant part of the settlement." *In re Marriage of Thurston*, 92 Wn. App. 494, 503, 963 P.2d 947 (1998).

In contrast, in *Yearout*, the court held that the appellant's "complaints as to the separation agreement's unfairness" after his salary decreased significantly did not constitute an extraordinary circumstance justifying relief under CR 60(b)(11), despite his assertion that he could no longer afford his agreed-to spousal support payments. 41 Wn. App. at 898, 902.

The trial court in this case did not explain precisely why it concluded that Michael "made no claim which justifies relief from the final order under CR 60(b)(11)"; however, "[w]e can affirm a trial court on any basis supported by the record." CP at 152 (CL 10); *Larson v. State*, 9 Wn. App. 2d 730, 744, 447 P.3d 168 (2019).

As an initial matter, CR 60(b)(4), not (11), covers Veronica's alleged failure to disclose the omitted end date, and we discuss CR 60(b)(4) in more detail below. Additionally, any alleged irregularity caused by the trial court's failure to apply the statutory factors set forth in RCW 26.09.090(1) is not extraneous to the proceedings. And we have already explained above that a trial court need not address the spousal support considerations where the parties have agreed to the terms of spousal support. That leaves Michael's argument that a "perpetual-lifetime-maintenance lien on [his] future earnings" constitutes a manifest injustice justifying vacation under CR 60(b)(11). Br. of Appellant at 22-23.

Michael's briefing does not identify a manifest injustice of the variety or degree that is normally the subject of a CR 60(b)(11) challenge. He does not allege a change in the law that should be applied retroactively, as in *Flannagan*. 42 Wn. App. at 215. While Veronica did fail to make car payments pursuant to the decree for several months, the term requiring her to make those payments does not represent a significant part of the parties' agreement as in *Thurston,* and she remedied her delinquency. 92 Wn. App. at 503. Michael's argument that the lifetime spousal

support term constitutes a "lien on [his] future earnings" most closely resembles the argument in *Yearout*, where the appellant's alleged inability to pay spousal support after a decrease in salary did not justify vacation under CR 60(b)(11). Br. of Appellant at 23; 41 Wn. App. at 898, 902. Just as in *Yearout*, there was not an extraordinary circumstance justifying relief under CR 60(b)(11) in this case.

Michael correctly notes that lifetime spousal support is generally disfavored in Washington, especially for a short-term marriage. *In re Marriage of Leaver*, 20 Wn. App. 2d 228, 238, 241, 499 P.3d 222 (2021). But in *Leaver*, the court also recognized that there is no prohibition against long-term or lifetime spousal support, subject to modification if circumstances change. 20 Wn. App. 2d at 241-42. Thus, there is certainly no prohibition on an agreement to lifetime spousal support. Moreover, even if the spousal support term were considered manifestly unjust under CR 60(b)(11), the trial court did not err by concluding that "property division and spousal support are inextricably linked" and should be considered globally or not at all. CP at 150 (CL 3); *see In re Marriage of Crosetto*, 82 Wn. App. 545, 559, 918 P.2d 954 (1996). Thus, the trial court properly rejected Michael's request to vacate the spousal support term alone.

The trial court did not abuse its discretion by declining to vacate the lifetime spousal support term for any other reason justifying relief under CR 60(b)(11).

C.      Fraud or Misrepresentation Under CR 60(b)(4)

Next, Michael argues for the first time on appeal that the spousal support term should be vacated under CR 60(b)(4) because Veronica breached her fiduciary duty by failing to disclose that he had omitted the end date by mistake. He contends that we should hear this issue for the first

time on appeal because Veronica failed to establish facts justifying the trial court's denial of his motion to vacate under RAP 2.5(a)(2).

"The appellate court may refuse to review any claim of error which was not raised in the trial court. However, a party may raise the following claimed errors for the first time in the appellate court . . . (2) failure to establish facts upon which relief can be granted." RAP 2.5(a)(2). This is a modern restatement of an older rule that allowed appellants to raise "failure to state a claim for relief" for the first time on appeal. *State v. Clark*, 195 Wn. App. 868, 874, 381 P.3d 198 (2016) (citing *O'Toole v. Faulkner*, 29 Wash. 544, 548, 70 P. 58 (1902)). In *Clark*, Division Three explained that RAP 2.5(a)(2) has been applied where "the 'fact' in question was one that went to an element of the case such as the age of the complainant alleging age discrimination." *Id.* at 875. The *Clark* court held that the provision should be read to apply "solely to insufficient proof of an essential element of a party's case." *Id.* at 877.

Veronica did not state any claims or seek any specific relief below at the motion to vacate stage. Even if we consider the earlier entry of the dissolution decree, the parties submitted an agreed petition and proposed decree. At no time did she have the burden to establish any facts, so her failure to establish facts is not an error and we need not reach this newly argued basis to vacate on appeal.

Even if we were to reach the merits of Michael's argument, clear and convincing evidence of fraud, misrepresentation, or other misconduct is required to prevail on a motion under CR 60(b)(4). *Bresnahan*, 21 Wn. App. 2d at 406. To support his claim, Michael offers the April 14 text message exchange, which establishes that the parties contemplated a three-year spousal support term in the weeks before drafting their dissolution petition and decree. He also asserts that

he "would never have agreed to lifetime maintenance after only a seven-year marriage." Br. of Appellant at 19.

However, as the trial court noted, other negotiations clearly occurred outside of that limited text exchange. And while we recognize that lifetime spousal support is unusual under these circumstances, it is worth emphasizing that Michael himself drafted the term. *Leaver*, 20 Wn. App. 2d at 241. We flatly reject the argument that Veronica committed misconduct by failing to inform Michael about his own drafting error. Michael does not meet his burden to establish fraud or misrepresentation by clear and convincing evidence.

## II. OTHER CHALLENGES

Michael further argues the trial court improperly concluded that he was required to demonstrate a meritorious defense or substantial potential for prevailing on the merits to justify resuming litigation. Michael argues that this standard does not apply because he was not a defendant seeking to vacate a final order. He fails to articulate why it was improper for the trial court to consider his likelihood of success before disrupting the finality of a judgment. We reject this argument.

To the extent Michael argues that the findings and conclusions accompanying the dissolution decree failed to support the lifetime spousal support term, our review of a CR 60(b) motion is limited to the trial court's decision on the motion to vacate, not the propriety of the underlying order. *Persinger*, 188 Wn. App. at 609. We decline to reach the merits of this claim.

## ATTORNEY FEES

Veronica requests attorney fees under RAP 18.1(a), which allows us to grant attorney fees on appeal "[i]f applicable law grants to a party the right to recover reasonable attorney fees or

expenses on review." RCW 26.09.140 provides for attorney fees on appeal of dissolution proceedings, including appeals related to motions to vacate. *In re Marriage of Moody*, 137 Wn.2d 979, 993-94, 976 P.2d 1240 (1999). "In exercising discretion under this statute, we consider the arguable merit of the issues on appeal and the parties' financial resources," including need and ability to pay. *In re Marriage of Raskob*, 183 Wn. App. 503, 520, 334 P.3d 30 (2014).

The trial court awarded Veronica attorney fees under RCW 26.09.140 below. The trial court noted that Veronica's "income is very modest." CP at 262. Financial documents presented to the trial court showed that Veronica made no more than 22 percent of Michael's base salary. Veronica and Michael provided updated financial affidavits to this court in April 2025 and December 2025, respectively, showing a similar income disparity even after factoring in spousal support. Therefore, we award Veronica reasonable attorney fees on appeal in an amount to be determined by our commissioner.

## CONCLUSION

We affirm and award attorney fees to Veronica.

No. 59855-8-II

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

_____
GLASGOW, J.

We concur:

_____
CRUSER, C.J.

_____
PRICE, J.